[Civ. No. 8730.   Third Dist.   May 4, 1956.]

JOE F. NOVO, JR. et al., as Administrators, etc., Appellants, v. HOTEL DEL RIO (a Partnership) et al., Respondents.

Lewis, Lewis & Lewis for Appellants.

Anthony J. Kennedy for Respondents.

VAN DYKE, P. J.—Emilia Novo brought this action to recover, as the wife of Joe F. Novo, Sr., community property which she alleged he transferred without valuable consideration and without her written consent, in violation of the provisions of section 172 of the Civil Code. It is without dispute in the record that the transfer of which appellant complained was a transfer of community personal property of herself and her husband and that the transfer had its roots in a gambling transaction between her husband and Arthur Valine, Ed Emigh and Glenn Maxey. On June 26, 1952, the four men engaged in a game of draw low-ball poker; and when the game was over, Joe Novo had lost to the other players a total of $7,300. During the game he gave to Arthur Valine a check drawn on a Rio Vista bank in the sum of $5,300 and made out to cash. This check, after the game, Arthur delivered to Emigh and Maxey, and they cashed the same and divided it among them. On the day after the game, Joe Novo also gave a second check drawn on the same bank to Arthur Valine. This check Arthur endorsed, cashed, and from the proceeds retained $1,200 as his share of the winnings of the evening. He gave the rest to Emigh and Maxey, and they divided it between themselves as their final share of winnings.

By her complaint, appellant endeavored to hold the Hotel Del Rio, a partnership, composed of the father and brother of Arthur Valine, responsible for his losses on the theory

that they were running a house game, but the findings of the trial court upon substantial evidence were against these allegations. She also sought to hold Arthur Valine as wholly responsible for Joe Novo's losses, claiming that he was running a banking game, acting as banker, and that, therefore, the total of Joe's losses were losses to Arthur. But the evidence and the findings are against this claim, also.

It appears from the evidence that the game was an ordinary four-handed draw poker game of the low-ball variety; that it had lasted from around 10 p. m. until 6 a. m. the following morning, during which time many hands were played; and that when Joe Novo gave the checks to Arthur Valine he did so with the authorization to Arthur to pay his losses to those who had won money from him during the evening, including his losses to Arthur. Under no consideration, therefore, could plaintiff and appellant recover from Arthur the community funds which had, upon Joe's direction, passed to Emigh and Maxey who were not made parties to the suit. It still remains, however, to determine whether or not she could recover from Arthur the money which her husband paid him.

Whether or not the funds which Joe dispersed were community funds of himself and appellant, his wife, was not expressly found by the trial court. It appears that this was for the reason that the court considered Joe had received a valuable consideration for the transfer of funds and, therefore, needed not the written or other consent of appellant even though the funds were community. However, from the record there is no conflict on the subject of the status of the funds, and it must be taken that they were community funds.

The trial court found as follows: That on or about June 26, 1952, the day following the game, Joe F. Novo paid to Arthur Valine a sum of money as losses by said Joe F. Novo and winnings by said Arthur A. Valine in a game of poker held in the premises of the Del Rio Hotel; that it was not true that said sum of money so paid and lost by the defendant Joe F. Novo was paid by him without valuable consideration; that it was true that defendant Arthur Valine furnished a good and valuable consideration for all money paid to him; that said Arthur Valine has held and kept and does now hold and keep the said losses of the said Joe F. Novo paid to him as aforesaid. On the foregoing findings the court con-

cluded that appellant was entitled to take no judgment whatever against any of the defendants.

The finding that, when he transferred the funds to Arthur Valine in payment of gambling losses to Arthur, Joe Novo received a valuable consideration therefor furnished by Arthur, is without support in the evidence and the law. (*Tokar* v. *Redman*, 138 Cal.App.2d 350, 354 [291 P.2d 987].) When Joe Novo left the game and went home it was true that he had suffered gambling losses and in that sense owed gambling debts to those who had won from him. However, any obligation arising therefrom was, of course, wholly unenforceable by reason of the unlawfulness of the transaction out of which the debts arose. Consequently, his discharge of his gambling debt to Arthur Valine was wholly without consideration. "As no liability can be incurred by virtue of a gambling contract, such contract can never be a consideration for a new contract." (38 C.J.S., "Gaming," § 3, p. 79.) By acceptance of the check, Arthur Valine gained no title thereto and equally had no title to the funds which later the check produced and which, as the court found, he still holds. (*People* v. *Rosen*, 11 Cal.2d 147, 149-150 [78 P.2d 727, 116 A.L.R. 991].)

We hold that the transfer to Arthur of community funds of Joe Novo and the appellant was, within the meaning of section 172 of the Civil Code, a transfer of community funds without the consent, written or otherwise, of the appellant and without the receipt by the husband of valuable or any consideration for that transfer.

The trial court apparently based its judgment wholly upon its finding that the transfer which the appellant attacked was a transfer for a valuable consideration, and that, therefore, it could not be set aside by the action of the wife. But respondents argue that even if that basis for the judgment be unsound, nevertheless, because of the unlawfulness of the transactions between Joe and Arthur, Joe cannot recover moneys paid for his losses, and that the law will not permit appellant, though innocent, to recover the community property and restore it to the community because to do so would be to enable Joe thus indirectly to obtain relief which directly the law would not afford him. A parallel is sought to be drawn between such a situation and that presented where a wife, tortiously injured, seeks to recover damages. and the defense is interposed and sustained that her husband had been guilty of contributory negligence. Such cases are in-

applicable. They are based on the doctrine of unjust enrichment under which the negligence of one spouse is imputed to the other in order to prevent the negligent spouse from profiting by his own wrong. (*Flores* v. *Brown*, 39 Cal.2d 622, 630-631 [248 P.2d 922]; *Kesler* v. *Pabst*, 43 Cal.2d 254 [273 P.2d 257].) In the instant case, the husband, although benefiting by the wife's recovery, would not thereby be unjustly enriched. There would be but a return to the community of that which was unlawfully taken from it. The restoration of that which was unlawfully obtained does not result in the husband profiting from his own wrong. It merely places the parties in the positions which they occupied prior to the transaction. No one is penalized nor is anyone unduly enriched. The enforcement of the innocent wife's statutory right is neither inequitable nor unjust.

■ It is well established that a transfer of community property by the husband without a valuable consideration and without the consent of the wife may be set aside in its entirety by the wife during the lifetime of her husband. (*Britton* v. *Hammell*, 4 Cal.2d 690 [52 P.2d 221].) ■ After his death, the widow may set aside one-half of such unauthorized transfers or may recover one-half of the value thereof from her husband's estate. (*Trimble* v. *Trimble*, 219 Cal. 340 [26 P.2d 477]; *Fields* v. *Michael*, 91 Cal.App.2d 443 [205 P.2d 402].) This is true even if the husband's gifts were the result of an illicit relationship. (*Estate of McNutt*, 36 Cal.App.2d 542 [98 P.2d 253].) The taint of the husband's immoral association with his donee does not preclude the innocent wife from enforcing her statutory right to recover the community property which the husband has disposed of without her consent. The protection contemplated by section 172 of the Civil Code is unqualified.

We see no reason why the plain mandate of the statute should not prevail in this case.

Insofar as the judgment appealed from denies recovery of the funds paid to, and retained by, Arthur Valine, it is reversed. In all else it is affirmed.

Schottky, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied May 31, 1956, and the petition of respondent Arthur Valine for a hearing by the Supreme Court was denied June 27, 1956.

---

*Assigned by Chairman of Judicial Council.