[Civ. No. 24780.   Second Dist., Div. One.   Apr. 13, 1961.]

VIVIAN HILL, Individually and as Executrix, etc., Appellant, v. NAOMI CONOVER, Respondent

Arthur D. Guy and Charles F. Legeman for Appellant.

Ball, Hunt & Hart and Clark Heggeness for Respondent.

WOOD, P. J.—Plaintiff sought a judgment (1) that a trust agreement made by M. O. Conover and his wife, defendant Naomi Conover, was invalid, (2) that the trust agreement had been revoked by Mr. Conover, (3) that the trust agreement was of no force and effect for the reason that it was induced by the fraud and undue influence of defendant, and (4) that plaintiff's title to the trust agreement property be quieted.

Judgment was in favor of defendant.

Plaintiff appeals from the judgment and contends, among other things, that certain findings are not supported by the evidence.

On July 14, 1941, M. O. Conover and Naomi Trolinger entered into a prenuptial agreement which stated that Mr. Conover thereby conveyed to Naomi a market building in Twin Falls, Idaho, a cocktail bar in Long Beach, California (known as the Crystal Bar), a bank account of approximately $2,500, a 1940 Buick automobile, and a policy of life insurance in the amount of $1,000. The agreement provided further that in the event Naomi did not marry Mr. Conover, the agreement would be of no force and effect; that the conveyance was ''conditioned upon the agreement'' of Naomi to pay to Mr. Conover's daughter, Vivian Laird (now Vivian Hill), the sum of $8,000 in four equal annual installments commencing one year after the death of Mr. Conover; that Mr. Conover, during his lifetime, should have control of, and the income from, all the property, except that Naomi should have control of the cocktail bar and the right to dispose of the bar and the revenue therefrom. The property referred to in the agreement was all the property which Mr. Conover owned, or in which he had an interest, except a half interest in a ranch in Idaho. On the same day, July 14, 1941, Mr. Conover executed a deed whereby he conveyed the market building in Idaho to Naomi. That deed was not recorded. On July 17, 1941, three days after the execution of the trust agreement, they were married in Las Vegas, Nevada. At that time he was 70 years of age and she was 44 years of age. He had two daughters by a previous marriage—Thelma Greenhall and Vivian Laird (now Vivian Hill). Naomi had a son by a previous marriage.

The Crystal Bar had been purchased by Mr. Conover in May 1941. According to the testimony of Vivian Hill (plain-tiff), the purchase price of the bar was $6,500; she lent Mr. Conover $3,500 for use in purchasing the bar; he repaid the loan about a year later. According to the testimony of Naomi, she and Mr. Conover borrowed about $5,000 from her sister for use in purchasing the bar.

After the marriage, and prior to April 1945, Mr. Conover and Naomi purchased four parcels of real property. Title to those parcels was taken in the name of Naomi as her separate property. According to Naomi's testimony, the first parcel (dwelling house) was purchased by paying $500 of her own money as a down payment and by using income from the

Crystal Bar. The second parcel (dwelling house) was purchased with the proceeds from the sale of the first parcel and with money from a joint account. The third parcel (apartment house) was acquired by an exchange of the second parcel. The other parcel (service station) was purchased with money from a joint account. The money in the joint account was income from the Crystal Bar and ''income from Twin Falls.''

About April 10, 1945, the market building in Idaho was sold for $27,500, and the proceeds from the sale were deposited in Mr. Conover's bank account in Idaho. On April 10, 1945, Mr. Conover gave Naomi a check (on that bank account) for $1,000. On April 11, 1945, Mr. Conover, as purchaser, and Irwin Stevens, as seller, signed escrow instructions regarding the purchase and sale of property in Long Beach, hereinafter referred to as the Apple Valley property. The purchase price of the property was $35,000, which was payable as follows: $25,000 through the escrow, and the balance by a note for $10,000 secured by a trust deed on the property. The escrow instructions provided that title to the property was to be vested in Mr. Conover as his separate property. On April 13, Mr. Conover and Naomi signed an amendment to those instructions, which amendment provided that title to the property was to be vested in Mr. Conover, ''a married man.'' On April 19, Mr. Conover gave the bank, as escrow holder, a check (on the bank account in Idaho) for $25,000. Mr. Conover executed a note in the amount of $10,000 and executed a trust deed on the property to secure the note. The note represented the balance of the purchase price. (The record does not show whether Naomi also signed the note and the trust deed. Naomi states in her brief that the trust deed was ''executed by both parties,'' apparently meaning Mr. Conover and Naomi.) The Apple Valley property consists of a commercial building and a parking lot. At the time Mr. Conover purchased the property it was rented to a firm engaged in the cleaning and dyeing business. On July 31, 1945, Mr. Conover, as lessor, leased the property for a term of five years for use as a restaurant, cocktail bar, and parking lot. According to Naomi's testimony, $5,000 was paid from the joint account for improvements on the building at that time.

On April 1, 1946, Mr. Conover made a will by the terms of which he gave the Apple Valley property to his daughter Vivian (plaintiff), gave $100 ''out of the value'' of the Apple Valley property to his daughter Thelma, and gave the re-

mainder of his estate "including my [his] interest in the Crystal Bar" to Naomi. The will included the following statement: "SIXTH: I further declare that the property particularly described herein is my sole and separate property." He also stated therein that Thelma "has been provided for by County land [the ranch] in Twin Falls, Idaho." The Bank of America was named as executor of that will, and Julian Van Dyke (who prepared the will) was named as attorney for the executor.

Sometime between April 1, 1946 (the date of the will referred to above), and December 12, 1946, Mr. Conover and Naomi purchased property referred to in the briefs as the Army and Navy Club. Title to that property was taken in the name of Naomi as her separate property. According to Naomi's testimony the property was purchased with money received from sales of the Crystal Bar and the apartment house referred to above.

On December 12, 1946, Mr. Conover made a new will by the terms of which he gave the Apple Valley property to Vivian, and directed her to pay $100 to Thelma "out of the value" of that property, and he gave the remainder of his estate to Naomi. Vivian was named as executrix of that will. He also stated therein that Thelma "has been provided for by County land [the ranch] in Twin Falls, Idaho."

Late in 1947, Naomi learned that Mr. Conover had executed the wills referred to above, and she "ordered" him to leave their residence. He left the residence and lived in an apartment for several months. According to Naomi's testimony, he visited her every day during the time he was living in an apartment. After several months he returned to the residence. The record is not clear as to the date he returned.

On December 10, 1948, Mr. Conover made a new will by the terms of which he gave an undivided one-half interest in the Apple Valley property to Vivian, gave an undivided one-half interest in that property to Naomi, and gave the remainder of his property to Vivian and Naomi, "share and share alike." Vivian and Naomi were named as executrices of that will. The will included the following statement: "I declare that all property of which I die possessed is my separate property." He also stated therein that he omitted to provide for Thelma for the reason he had made gifts of substantial value to her during his lifetime.

On February 2, 1949, Mr. Conover moved from the family residence to an apartment. According to Naomi's testimony,

she ordered him to leave because he had been to Idaho and he "did not keep his word" and "put her name back on the checking account" (apparently the checking account in Idaho).

On February 4, 1949, he made a codicil to the 1948 will. Under the terms of that codicil, he gave to Naomi the income from the Apple Valley property for a period of three years after his death, and he confirmed the December 10, 1948, will as modified by the codicil.

On May 5, 1949, Mr. Conover and Naomi executed a deed conveying the Apple Valley property to Mr. Conover and Naomi as trustees. On that same day they executed a declaration of trust which provided that they should jointly manage and control the trust property; that after the death of either trustee, the survivor should manage and control the property; that during the lifetime of Mr. Conover the trustees should use the income from the property for the payment of taxes, costs of maintenance, and payments of principal and interest on any encumbrances then, or thereafter placed, against the property; that after the payment of the items last referred to, the balance of the income should be paid to Mr. Conover as his separate property. The declaration of trust provided further that upon the death of either trustee, the surviving trustee should be vested with the rights of both trustees and should terminate the trust and distribute the trust estate as follows: In the event Mr. Conover was the survivor, he should "execute and deliver to the administrator or executor of the estate" of Naomi the promissory note of "said trustee" and Mr. Conover in the amount of $10,000 payable in three equal annual installments commencing one year after the death of Naomi. The note should be secured by the entire trust estate, and "thereupon" the trustee should convey and transfer all the trust estate to Mr. Conover. "In the event the said Naomi Conover shall be the survivor the said trustee shall execute and deliver to Vivian Hill, the daughter of said M. O. Conover, if said Vivian Hill shall be then surviving, and if she shall not be then surviving then to Shirley Greenhalgh and Helen Greenhalgh [Greenhall], the grandchildren of said M. O. Conover, the promissory note of the said trustee and of the said Naomi Conover in the total principal amount of $10,000, . . ." The note should be secured by the entire trust estate, and thereupon the trustee should convey and transfer all the trust estate to Naomi. Upon the death of either trustor, the surviving trustee might,

but should not be required to, use any of the assets or proceeds of the trust estate for the payment of any debts of such deceased trustor which the surviving trustee might elect to pay. All expenses of litigation and attorney's fees, incurred by the trustees or either of them in connection with the administration or interpretation of the declaration or the rights of the parties under the agreement, should be a charge against the trust estate.

Naomi testified as follows: Mr. Conover suggested, prior to the time that the trust agreement was made, that she see Mr. Farr, an attorney in Los Angeles. She saw Mr. Farr and told him that she and Mr. Conover wanted "this property [the Apple Valley property] fixed where neither one —— we will be able to be fair to both." Mr. Farr prepared an agreement and mailed it to them. Mr. Conover objected to said agreement for the reason that a provision that he was to have the income from the property during his lifetime had been "left out" of the agreement. On May 5, 1949, they went to Mr. Farr's office and signed the agreement after it had been redrawn to include the provision regarding income. Thereafter, checks for the rental of the property were deposited by Mr. Conover in the joint bank account.

Joseph A. Ball, called as a witness by plaintiff, testified that he met Mr. Conover in 1946, and he rendered legal services for him and Naomi at various times after that date; "within a year" after the trust agreement was executed they were in his office and Mr. Conover described the trust agreement briefly to him; about a week later, Mr. Conover came to the office alone and brought a copy of the trust agreement with him. Defendant's attorney asked Mr. Ball questions regarding the conversation between Mr. Ball and Mr. Conover. Plaintiff objected to the questions on the ground that the conversation would be hearsay evidence. The objection was sustained.

On June 30, 1950, Mr. Conover made another codicil to the 1948 will. In that codicil he stated that it was his wish, and he requested, that his body be interred at Twin Falls, Idaho; that except as modified by that codicil, he confirmed and republished the 1948 will and the 1949 codicil to that will.

On April 8, 1952, a policy of fire insurance covering the building on the Apple Valley property was issued to Mr. Conover. Prior to April 1955, the following endorsement or amendment was attached to that policy: "It is understood and agreed that the name of the insured under this policy

178

is hereby corrected to read as follows: 'M. O. and Naomi Conover, trustees, May 5, 1949, recorded July 29, '53.' '' In 1955 Mr. Conover obtained a new policy of insurance on the building. M. O. and Naomi Conover, as trustees, were named as the "insureds" under that policy. Naomi testified that the premiums on the policies were paid from the joint account.

In 1953 Naomi sold "100 feet" (a substantial part) of the Army and Navy Club property to Vivian Hill (plaintiff). Naomi testified that she and Mr. Conover lost "$100,000 or more" on the Army and Navy Club property.

On November 17, 1956, Mr. Conover died. The will of December 10, 1948, and the codicils of February 4, 1949, and June 30, 1950, were admitted to probate. Naomi declined to act as an executrix, and Vivian was appointed executrix. Thereafter Naomi offered to pay to Vivian "the first installment" of the $10,000 which under the trust agreement was payable by Naomi to Vivian. Vivian refused to accept the offer, and on April 11, 1957, she commenced this action.

There were four causes of action in the complaint. In the first cause of action plaintiff sought a judgment declaring the trust agreement invalid. In the second cause of action plaintiff sought a judgment declaring that Mr. Conover had revoked the trust agreement by the 1950 codicil. In the third cause of action, plaintiff sought to quiet title to the property referred to in the trust agreement. In the fourth cause of action, plaintiff sought to rescind and cancel the trust agreement.

The court found as follows: The Apple Valley property was not acquired and held by Mr. Conover as his separate property but was acquired by the use of the separate property of Naomi and the community property of Mr. Conover and Naomi, and it was thereafter held by Mr. Conover and defendant as community property until May 5, 1949. (The date the trust agreement and deed were executed.) Mr. Conover did not revoke or rescind the grant deed conveying the property to Naomi and him as trustees, and he did not revoke the trust agreement. The trust agreement is valid, and by reason of the death of Mr. Conover Naomi will own the Apple Valley property as her separate property after paying the sum of $10,000 to Vivian as provided in the trust agreement. After the execution and delivery of the trust agreement, M. O. Conover collected the rents from the property but did not remain in exclusive possession of the property. All rents from said property were treated and considered by Mr. Con-

over and Naomi as community property. After the execution of said documents, Mr. Conover did not hold or intend to hold said property as his separate property and exclude Naomi from all right to the property. The grant deed and the trust agreement are not testamentary in character, and those documents were intended by Mr. Conover and Naomi "to become, and were, operative during their lifetime." The trust agreement and deed are not ambiguous, uncertain, or unintelligible, and the beneficiaries can be ascertained "during the lifetime" of Mr. Conover and Naomi. The last will and testament and codicils of Mr. Conover did not revoke the deed or trust agreement. "Defendant [Naomi] never harbored any intent, secret or otherwise, to divest M. O. Conover of any property owned by him. Defendant did not misrepresent any facts to M. O. Conover, did not exert any undue influence upon M. O. Conover and did not take any advantage of M. O. Conover." Within one year after the execution of the trust agreement Mr. Conover had legal advice concerning said grant deed and trust agreement and he knew the contents and legal effect thereof.

The judgment was as follows: The grant deed and the trust agreement are valid; upon the payment by Naomi of $10,000 to Vivian Hill (plaintiff), "individually," or by the deposit of said sum in any bank "in favor of" Vivian on or before November 17, 1959, Naomi shall convey the Apple Valley property to herself as her separate property; upon payment of $10,000 by Naomi to Vivian, Vivian shall have no further interest in the property; Vivian, "individually, or as executrix of the estate of M. O. Conover, shall recover nothing further from defendant Naomi Conover"; defendant shall recover her costs against Vivian, individually, and as executrix.

■ Appellant contends that the trust agreement is invalid for the reason that Mr. Conover and Naomi were trustors, trustees, and beneficiaries of the trust. She states that it is fundamental that a person cannot be trustor, trustee, and beneficiary of his own trust. In *Fry* v. *McCormick,* 170 Kan. 741 [228 P.2d 727], the plaintiffs sought to set aside an oil lease which they had executed as trustees. In affirming a judgment for defendant, it was said: "Appellants' first contention is the trust agreement is invalid because it appoints the owners of the property as the trustees thereof. They insist a sole beneficiary of a trust cannot be the sole trustee thereof and conversely that a sole trustee of a trust cannot be

the sole beneficiary thereof, citing Restatement, Trusts, § 99(5) and § 115(5). That statement need not be labored. It is sound. It is based on the established principle that if the rule were otherwise the legal title and the entire beneficial interest would be merged in the same person who could fully dispose of the property as any other owner. In other words there would be no separation of the legal and beneficial interest and hence no trust relationship.

"That, however is not true under the terms of the present instrument. Here there are four trustees. True they are also beneficiaries but each is a trustee not only of his own beneficial interest but also for the beneficial interest of each of the others. Here each of the beneficiaries has an equitable interest which is separate from the legal interest held by the whole group. No one of the trustees without the concurrence of the others could properly transfer an undivided legal interest in the property free of the trust. The same sections of the text from Restatement on Trusts relied upon by appellants state the rule applicable to the present case. Section 99(4) reads: 'If there are several beneficiaries of a trust, the beneficiaries may be trustees.'

"In § 115(4) the principle is stated conversely as follows: 'If there are several trustees of a trust, the trustees may be beneficiaries of a trust.'"

In the present case there were two trustees, Mr. Conover and Naomi. Neither trustee was sole beneficiary, and the legal title and the entire beneficial interest in the property was not merged in them or in either of them. Mr. Conover was to receive the net income from the property during his lifetime. Neither trustee could have transferred the property without the concurrence of the other trustee. The trust was to terminate upon the death of either trustee. The surviving trustee could not properly transfer the property, or interest therein, free of the trust prior to the execution of the note referred to in the agreement. The persons who were to receive the note, Vivian, if Mr. Conover died first, and the representative of Naomi's estate, if Naomi died first, were also beneficiaries under the trust agreement. The trust agreement is not invalid for the reason that Mr. Conover and Naomi were trustors, trustees, and beneficiaries of the trust. There was no merger of the legal and the equitable titles.

Appellant contends that the trust agreement is invalid for the reason that it is testamentary in nature and

it was not subscribed by two witnesses. She argues that the evidence and the agreement "overwhelmingly demonstrated" that Mr. Conover and Naomi intended that the agreement should take effect only upon the death of one of them. In connection with that argument she refers to the following provisions of the agreement: Mr. Conover was to receive the net income from the property during his lifetime; he and Naomi were to manage and control the property; the survivor was to receive the property and execute a note for $10,000 (payable to Vivian in the event Mr. Conover died, or payable to the representative of Naomi's estate if Naomi died). ▮ In *Nichols* v. *Emery*, 109 Cal. 323 [41 P. 1089, 50 Am.St.Rep. 43], it was said, at page 330: "[T]o the creation of a valid express trust it is essential that some estate or interest shall be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately. [Citation.] By such a trust, therefore, something of the settler's estate has passed from him and into the trustee for the benefit of the *cestui*, and this transfer of interest is a present one and in nowise dependent upon the settler's death. ▮ But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and depend for its commencement upon the termination of an existing life or lives or of an intermediate estate." ▮ In the present case, Mr. Conover and Naomi executed a grant deed conveying the property to themselves as trustees. The entire legal estate in the property passed to them as trustees. The provisions of the trust agreement that the trustees were to pay the net income from the property to Mr. Conover during his lifetime, that Mr. Conover and Naomi were to manage the property, and that the survivor was to receive the property upon the execution of a note as referred to in the agreement, did not make the trust agreement testamentary. There was an immediate transfer of title. Furthermore, the provisions of the deed (conveying the property to Mr. Conover and Naomi as trustees), the amendment of the fire insurance policy (issued in 1952, changing the name of the insured from Mr. Conover to the trustees), and the new policy (issued in 1955, naming the trustees as "the insured"), constituted substantial evidence that Mr. Conover and Naomi intended that the deed and the trust agreement should become effective immediately.

182

Appellant contends that Mr. Conover revoked the trust agreement by making the codicil of June 30, 1950. She argues to the effect that since Mr. Conover owned the Apple Valley property as his separate property when the trust agreement was made, he was the only trustor and therefore he could revoke the trust agreement; that since the codicil of June 30, 1950, reaffirmed the will of December 10, 1948, wherein he gave the Apple Valley property to appellant (Vivian) and Naomi, the effect of the codicil was to dispose of the property contrary to the provisions of the trust agreement and to revoke that agreement. There was evidence that the Apple Valley property was of record in the name of Mr. Conover, a married man, when the trust agreement was made. There was also evidence that the purchase price of the property was $35,000; that $25,000 of that amount was paid from the proceeds of the sale of the market building in Idaho which Mr. Conover had transferred to Naomi under the prenuptial agreement; that the balance of the purchase price ($10,000) was represented by a note and trust deed; that rentals from the Apple Valley property were deposited in the joint bank account; and that payment of $5,000 for improvements on the property and payments on the note were made from that account. The court found that the Apple Valley property was not acquired by Mr. Conover as his separate property but was acquired by the use of the separate property of Naomi and the community property of Mr. Conover and Naomi. The evidence above stated was substantial evidence to support that finding. Section 2280 of the Civil Code provides: ''Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate.'' Mr. Conover was not the only trustor; he and Naomi were the trustors named in the trust agreement and they were the trustees. There was no evidence that Naomi signed any document revoking the trust agreement or that Mr. Conover gave her the original or a copy of the codicil of June 30, 1950, or that he ''filed'' any writing with her revoking the agreement. The trust agreement and deed were executed in 1949. Mr. Conover died in 1956. There was no evidence that Mr. Conover or Naomi, as trustees, or otherwise, transferred the property, or any interest therein, to Mr. Conover or to Naomi or to any one else, after the trust agreement was executed.

Furthermore, Mr. Ball testified regarding the execution of the codicil of June 30, 1950, as follows: Mr. Conover came to Mr. Ball's office and said that he and his wife were going to Central America; if he died down there he wanted to be buried in Twin Falls; he wanted it in writing; he wanted to make a will. He (Mr. Ball) replied that "we will make a codicil." He called a secretary and told her what Mr. Conover wanted. The secretary prepared the codicil, Mr. Conover signed it and left the office. The trust agreement was not mentioned at that time.

The court found that the last will and codicils of Mr. Conover did not revoke the deed or trust agreement. There was substantial evidence, as above stated, to support that finding.

Appellant contends that the evidence does not support the findings that Naomi never harbored any intent to divest Mr. Conover of any property owned by him, that Naomi did not misrepresent any facts to him or unduly influence him or take any advantage of him. She argues that a confidential relationship existed between Mr. Conover and Naomi; that the Apple Valley property was the separate property of Mr. Conover; that by the trust agreement Naomi obtained an advantage over him in that she succeeded in obtaining the entire fee to the property whereas it was his desire, as shown by the will of December 10, 1948, to give a half interest in the property to her (appellant) and a half interest to Naomi. She argues further that by reason of the confidential relationship, and the advantage gained by her, Naomi had the burden of showing that the transaction was fair, reasonable, and free from undue influence, and that Naomi did not present such evidence. As above stated, there was evidence that the Apple Valley property was acquired with the proceeds from the sale of the market building in Idaho which Mr. Conover had transferred to Naomi under the prenuptial agreement; that payments on the note (note given for balance of purchase price) were made from the joint account; that the rentals from the property were deposited in that account. There was no evidence that a confidential relationship existed between Mr. Conover and Naomi at the time the prenuptial agreement was executed.

Mr. Ball testified that Mr. Conover was "very active mentally," and he was "very keen" mentally.

Appellant (Vivian) testified that Mr. Conover was competent to take care of his business; his mind was keen; and he was fairly active and vigorous "for 86" years of age.

The evidence was sufficient to support the findings.
The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 5, 1961, and appellant's petition for a hearing by the Supreme Court was denied June 6, 1961