Sadie KATZ, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21119.

United States Court of Appeals
Ninth Circuit.

Sept. 14, 1967.

Burton S. Levinson, Levinson, Marcus & Bratter, Beverly Hills, Cal., for appellant.

Franklin Latcham, San Francisco, Cal., amicus curiae.

William M. Byrne, Jr., U. S. Atty., Loring W. Post, Asst. U. S. Atty., Los Angeles, Cal., Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellant is the widow of Leroy Joseph Katz, who died a resident of California on February 27, 1960. She brought this action under 28 U.S.C. § 1346(a) (1) to obtain a refund of Federal Estate Tax. The trial court entered a summary judgment against her (Katz v. United States, S.D.Cal.C.D., 1966, 255 F.Supp. 642) and she appeals. We reverse.

On August 29, 1956, Title Insurance and Trust Company executed a Declaration of Trust, in which "Leroy Joseph Katz, a married man," was named Trustor. This paper acknowledged receipt by the Trust Company, without consideration, of real and personal property from Leroy, and that the property was to be held in trust for the benefit of Sadie and of Leroy's children, their surviving spouses and surviving issue. Sections One, Two and Three give the trustee the usual powers to manage the properties, collect income, and invest the trust's funds. Then follows Section Four:

"During the lifetime and competency of the Trustor, the Trustee shall have no rights, duties, or powers with respect to any property held under this trust, it being understood that the Trustor retains all such rights, and shall collect, receive, and disburse, without accounting to the Trustee or

any other person, all income of every nature and description from the real and personal property held hereunder.

"The Trustee shall not exercise any of the powers set forth in SECTIONS ONE, TWO and THREE hereof without first obtaining the written consent of the Trustor, during his lifetime, and after his death without first obtaining the written consent of all of the adult beneficiaries who are then entitled to receive the income hereunder."

Succeeding sections, Five through Eleven, provide for disposition of the property after Leroy's death. Sadie is a life income beneficiary. She is to be succeeded by the children and they in turn by their issue, with certain provisions for the surviving spouses of children and for use of principal in case of need. Section Twelve is a spendthrift clause, effective as to beneficiaries other than Leroy. Section Thirteen reads:

"The right is reserved unto the Trustor to revoke, terminate or amend this trust, in whole or in part, at any time or from time to time, by written request therefor addressed and delivered to the Trustee, provided, however, that no such amendment shall affect the duties, liabilities or compensation of the Trustee, without its written consent."

The remaining sections confer extensive additional powers to be exercised by the trustee after Leroy's death, contain equally extensive exculpatory clauses, and make provision for the Trustee's compensation—$100 for executing the instrument, $360 per year during Leroy's life, and more extensive compensation thereafter.

Following the execution and acknowledgement of the instrument on behalf of the Trust Company, there appears:

### "TRUSTOR'S APPROVAL

"I, the undersigned, hereby fully approve the foregoing Declaration of Trust No. PP–13003 of TITLE INSURANCE AND TRUST COMPANY, and certify that it declares the trust under and upon which the trust property is to be held by the Trustee for the benefit of the persons herein named.

Dated: Aug. 24, 1956

Leroy Joseph Katz

Leroy Joseph Katz, Trustor

### "APPROVAL OF WIFE

"I, SADIE KATZ, wife of the Trustor, do hereby fully approve the foregoing Declaration of Trust No. PP–13003.

Dated: Aug. 24, 1956

Sadie Katz

Sadie Katz"

On May 5, 1957, the Trust Company executed an instrument reciting that it had received from Leroy a request to amend the trust, and stating that it is amended. Section Five is amended to vest management, after Leroy's death, in Sadie, the trustee to take over management only upon her death, disability, incompetency or refusal to manage. The trustee, however, is to collect and disburse income, 10% to each of the children, or their surviving issue, and the balance to Sadie. Section Fourteen is amended to impose upon Sadie, rather than the trustee, the duty to pay death taxes. The provisions for trustee's compensation are also amended. Appended is a "request" by Leroy that the trust be so amended, and the following:

### "CONSENT OF TRUSTOR'S WIFE TO PARTIAL AMENDMENT

"I, SADIE KATZ, Trustor's Wife, do hereby consent to and fully approve the foregoing PARTIAL AMENDMENT TO TITLE INSURANCE AND TRUST COMPANY'S Declaration of Trust No. PP–13003 and agree to be bound by the provisions thereof.

Dated at Los Angeles, California, April 27, 1957.

Sadie Katz

Sadie Katz

TRUSTOR'S WIFE"

On October 31, 1958, a similar document was executed, this time amending Section Six, dealing with the rights of

beneficiaries after Sadie's death. It bears the same form of consent by Sadie.

Attached to the Declaration of Trust is a list of assets conveyed to the trustee. All of the registered securities stood in the name of Leroy J. Katz; all of the real properties also stood in his name and were conveyed to the trustee by "Leroy J. Katz and Sadie Katz, husband and wife."

Sadie claims that all of the assets conveyed to the trust were the community property of herself and Leroy. The government denies this, but the trial court, for the purpose of its decision, assumed that Sadie is right.[1] It also found that there was no oral or collateral agreement between the spouses concerning the trust or the trust property. It held that by virtue of the terms of the Declaration, the trust property became the separate property of Leroy, and was therefore includible in his estate for purposes of the estate tax under Int.Rev.Code of 1954, §§ 2036 and 2038 (26 U.S.C. §§ 2036, 2038). Under the findings, the question is purely one of law—what was the effect of the execution of the Declaration of Trust?

Clearly, if Leroy placed his separate property in the trust, sections 2036 and 2038 would apply.[2] But each section is limited by its express terms; property is to be included only "to the extent of any interest therein of which the de-

1. On the basis of the meager record before us, we are by no means satisfied with this assumption. It shows that during Leroy's working life the spouses lived in Illinois, Indiana, Ohio and Pennsylvania; that all of the assets conveyed to the trust were acquired in those states, especially Illinois, and primarily from Leroy's earnings, but partly from the income of Sadie's separate property, or in California from the proceeds of or income received from such properties; that the parties came to California in 1940; that neither of them had any earnings in California. The principal support for the claim that the property was community property is a statement by Sadie, in an affidavit in support of her motion for summary judgment and in opposition to that of the government, reading as follows:

> "That soon after establishing domicile in the State of California in 1940, affiant and her now deceased husband, Leroy J. Katz, by their understanding and agreement, agreed that all their property in the State of California would be community property according to the laws of the State of California."

This affidavit was made on September 30, 1965, after the death of Sadie's attorney, when she had new counsel. Her deposition was taken on November 17, 1965. She testified that she signed the affidavit without discussing its contents with the attorney and that she and Leroy did not make any oral agreement on the subject. To say the least, there is a conflict as to the facts, and we think it possible that the trial court has confronted us with a hypothetical question. However, it may be that at least some of the property was community property, and if so, the legal issues here presented would still be in the case.

2. Section 2036 provides:

"(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

Section 2038 provides:

"(a) In general.—The value of the gross estate shall include the value of all property—

(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."

cedent [Leroy] has at any time made a transfer." Here, assuming that the property conveyed to the trustee was community, acquired after 1927, Sadie and Leroy each had a "present, existing and equal" interest in it (Cal.Civ.C. § 161a). Leroy had certain powers of management and disposition (Cal.Civ.C. § 172), but he could not, without Sadie's written consent, "make a gift of such community personal property, or dispose of the same without a valuable consideration" (Cal. Civ.C. § 172) or convey community real property without her joinder (Cal.Civ.C. § 172a).

It seems clear to us that the interest in the property of which Leroy, the decedent, made a transfer was his one-half interest in the property. If he can be said at all to have made a transfer of Sadie's one-half interest, he did so only as managing agent for the two of them. See Vai v. Bank of America, 1961, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247; Lovetro v. Steers, 1965, 234 Cal.App.2d 461, 44 Cal.Rptr. 604; In re Bray's Estate, 1964, 230 Cal.App.2d 136, 40 Cal. Rptr. 750. What he did, being done without consideration required by Civil Code § 172, was voidable by her. Harris v. Harris, 1962, 57 Cal.2d 367, 19 Cal.Rptr. 793, 369 P.2d 481; Tyre v. Aetna Life Ins. Co., 1960, 54 Cal.2d 399, 6 Cal.Rptr. 13, 353 P.2d 725; Novo v. Hotel Del Rio, 1956, 141 Cal.App.2d 304, 295 P.2d 576. Sadie's written approval, if it was a transfer at all, was in substance a transfer by her to the trustee, not to Leroy, of her one-half interest. This is even more clear, as to the real property. Leroy could not convey it. Both joined in the deeds; each transferred his or her one-half interest. Thus, the extent of the interest in the property that Leroy transferred is one-half, and that is the extent to which, under sections 2036 and 2038, the property is includible in his estate.

Nor can we accept the trial court's conclusion that by virtue of the execution of the Declaration of Trust, all of the property conveyed to the trustee became the separate property of Leroy. It is well settled in California that property acquired with community funds or property is also community property. See, for example, the many cases cited by us in Scott v. C. I. R., 9 Cir., 1967, 374 F.2d 154, notes 6–9, and in United States v. Stewart, 9 Cir., 1959, 270 F.2d 894. We know of no case that holds that the equitable interests of a husband and wife in an intervivos trust, created by them by conveyance of their community property to the trustee, cannot also be community property. We would not expect the California courts to so hold.

There is a statutory presumption that property acquired by the spouses during marriage is community property (Cal.Civ.C. § 164). The presumption is a strong one, which the California Supreme Court has characterized as fundamental to the community property system. In re Duncan's Estate, 1937, 9 Cal.2d 207, 70 P.2d 174. It can be overcome only by clear and satisfactory proof. In re Jolly's Estate, 1925, 196 Cal. 547, 238 P. 353. It is even stronger when the property was acquired with community property. It extends to every conceivable type of property, including insurance policies and their proceeds, Scott v. C. I. R., supra; United States v. Stewart, supra; a cause of action for the wrongful death of or injury to a minor child, Fuentes v. Tucker, 1947, 31 Cal.2d 1, 187 P.2d 752; Emery v. Emery, 1955, 45 Cal.2d 421, 289 P.2d 218; a cause of action for injury to either spouse, Flores v. Brown, 1952, 39 Cal.2d 622, 248 P.2d 922; Zaragosa v. Craven, 1949, 33 Cal.2d 315, 202 P.2d 73, 6 A.L.R.2d 461; a law practice, Brawman v. Brawman, 1962, 199 Cal.App.2d 876, 19 Cal.Rptr. 106; the interest of a spouse in a partnership, Wood v. Gunther, 1949, 89 Cal.App.2d 718, 201 P.2d 874; good will of a business, Mueller v. Mueller, 1956, 144 Cal. App.2d 245, 301 P.2d 90; borrowed money, Hogevoll v. Hogevoll, 1943, 59 Cal. App.2d 188, 138 P.2d 693; Kenney v. Kenney, 1954, 128 Cal.App.2d 128, 274 P.2d 951; Bales v. Farley, 1951, 107 Cal. App.2d 642, 237 P.2d 686; and leasehold interests, In re Fellows' Estate, 1930, 106 Cal.App. 681, 289 P. 887. Why not to a retained equitable interest in a trust?

We find at least three California decisions that hold that such an interest can be community property. In Henie v. Henie, 1959, 171 Cal.App.2d 572, 340 P.2d 1024, the husband created a trust with community funds, without his wife's consent or joinder. The terms of the trust are not stated. The trial court held that the husband's interest in the trust was community property, and this judgment was affirmed. In Givens v. Johnson, 1946, 73 Cal.App.2d 139, 166 P.2d 67, a third party took title to real property purchased and paid for by the husband and wife, pursuant to an understanding between them all. The court held that there was a resulting trust, and affirmed a judgment that the property was community property. In Hill v. Conover, 1961, 191 Cal.App.2d 171, 12 Cal.Rptr. 522, husband and wife created a trust of which they were trustees and, along with a daughter of the husband, beneficiaries. The principal issue was as to the validity of the trust, but the court also sustained findings that the property in the trust was community property. See also Bixby v. Bixby, 1953, 120 Cal.App.2d 495, 261 P.2d 286.

There is a further presumption, to the same effect, where husband and wife acquire property by an instrument in which they are described as husband and wife. Cal.Civ.C., § 164. Here, the Declaration of Trust describes Leroy as "a married man" and Sadie as "the Trustor's wife," or "wife of the Trustor." Thus, if it be said that they acquired a new, equitable, interest under the Declaration of Trust, that interest, too, is presumed to be community property.

Moreover there is the further rule that change in the form of community property does not change its community character. Boyd v. Oser, 1944, 23 Cal.2d 613, 145 P.2d 312; Hannah v. Swift, 9 Cir., 1932, 61 F.2d 307.

It is, however, well established that the spouses can, by agreement, change separate property to community, and vice versa. Tomaier v. To-maier, 1944, 23 Cal.2d 754, 146 P.2d 905. And the form of conveyance by which property is acquired may be inconsistent with its being community property, as in joint tenancies. Siberell v. Siberell, 1932, 214 Cal. 767, 7 P.2d 1003. Even in such a case, however, the spouses can agree that the property is community property. Tomaier v. Tomaier, supra; In re Baglione's Estate, 1966, 65 Cal.2d 189, 417 P.2d 683, 53 Cal.Rptr. 139. Here, there is, as the trial court found, no such collateral agreement as to the spouses' interest in the trust.

The trial court was of the opinion that the terms of the Declaration of Trust itself were inconsistent with there being community property. It treated the execution of the Declaration as, in substance, a conveyance by Sadie to Leroy. It said that the property became his separate property "since, under the terms of the trust, he was accorded the right solely to enjoy the income from the trust and was given the power to revoke, terminate or amend the trust. These rights and powers vested in the said decedent control of, and the beneficial enjoyment of, all of the trust property." 255 F.Supp. at 643.

We do not agree. In the first place, nothing that Sadie signed contains any express language whereby she conveyed anything to Leroy. In the second place, if she had conveyed all her rights when the Declaration was executed, why was her further approval of each amendment required? The Declaration does not require her approval of amendments. But if the property remained community, then Civil Code §§ 172 and 172a do require her consent or joinder, if the amendment would deprive her of any of her community interest. Absent such consent or joinder, she could have, at Leroy's death, set aside the trust as to her one-half of the community property. Tyre v. Aetna Life Ins. Co., supra; McDougald v. First Federal Trust Co., 1921, 186 Cal. 243, 199 P. 11. The fact that her consent was sought, each time, is some indication that the parties believed that she had a community property

interest in the trust. In the third place, we do not find that the powers given to Leroy to "collect, receive, and disburse, without accounting to the trustee or any other person, all income" from the trust property (Section Four) and to "revoke, terminate or amend this trust" (Section Thirteen) are so inconsistent with the continued community character of the trust property as to overcome the presumptions to which we have referred.

Subject only to the exceptions already mentioned (Cal.Civ.C. §§ 172, 172a), Leroy had full power to manage and dispose of the community property before the trust was created. It is arguable that, under Section Four of the Declaration of Trust, he could, without Sadie's approval, give away income from the property, which he could not do under section 172. But we cannot see why a wife cannot give her husband power to give away the income from community personal property without thereby transmuting the principal into separate property. Cf. Fong Hong May v. Fong Wan, 1959, 166 Cal.App.2d 706, 333 P.2d 797; Cf. Cal.Civ.C. § 171c. We can see no intent, in fact or in law, to transmute it here. It is less arguable that Leroy could, under Section Thirteen, give away the principal of the personal property, or convey away the real property, without Sadie's consent or joinder. That section is equally consistent with the conclusion that, upon revocation or termination, the property taken out of the trust would still be community property, and that therefore the restrictions of sections 172 and 172a would apply to Leroy in dealing with it. The right to amend would still be subject to those restrictions.

We think that, whatever powers Leroy had under Section Four and Section Thirteen, they were held by him as manager of or agent for the community property and subject to his obligations as such manager. In this respect, we agree with the Fifth Circuit in C.I.R. v. The Chase Manhattan Bank, 1958, 259 F.2d 231, 258. Here, as there, the trust was not created by Leroy with his property; it was created by Leroy and Sadie with their property.

Our views are reinforced by the peculiar nature of this trust. If ever a trust came close to being a "dry" trust, a mere agency, during Leroy's lifetime, and testamentary in character, this one does. See our discussion of this problem in Dessar v. Bank of America, 9 Cir., 1965, 353 F.2d 468. There is far less substance to this trust than there was to the *Dessar* trust. We do not pass on the validity of this trust; we assume that it is valid. (The question was not argued in the trial court). We note its nature as a further aid to determining, from the instrument itself, the probable intent of the parties and the legal effect of what they did. In substance, and for all practical purposes, it left the management and control of the community property, during Leroy's life, exactly where it was before the trust was created, in Leroy. If it enlarged his managerial powers at all, it did so in but one respect—it permitted him to give away the community income. Its principal purpose is not to change, in any substantial way, the property rights of the parties during their joint lives, but to govern the disposition of those properties at death. We cannot find in it any intent on the part of either spouse to transmute their community property into Leroy's separate property. Compare cases holding that the naming, by the husband, of the beneficiary of an insurance policy on his life, does not show an intent to, and does not, change the character of the property from community to separate. In re Mendenhall's Estate, 1960, 182 Cal.App.2d 441, 6 Cal. Rptr. 45; Scott v. C. I. R., supra; United States v. Stewart, supra.

The government relies, as did the trial court, upon Kirkwood v. Bank of America, 1954, 43 Cal.2d 333, 273 P.2d 532. There, the husband created an intervivos trust, and the wife, in writing, consented. All of the property was pre-1927 community to which Cal.Civ.C. § 161a does not apply. The wife had no ownership interest in the property—merely an expectancy. Blethen v. Pacific Mut. Life Ins. Co., 1926, 198 Cal. 91, 243 P. 431; Lahaney v. Lahaney, 1929, 208 Cal. 323, 281 P. 67; United States v. Robbins,

1926, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285; Crocker First Nat'l Bank of San Francisco v. United States, 9 Cir., 1950, 183 F.2d 149; Rogan v. Delaney, 9 Cir., 1940, 110 F.2d 336; Gillis v. Welch, 9 Cir., 1935, 80 F.2d 165. As in our case, the husband was to receive all of the income for life, and had power to revoke. If the wife survived, the trust was to be divided into two parts, from which she was to receive the income. She also had power to amend or revoke or appoint Part A, but not Part B. The question was, what part of the trust passed to wife under the trust and was taxable under Cal.Rev. & Tax C. § 13554, which dealt with community property "transferred, * * * other than by will or the laws of succession from one spouse to the other". It made one-half of the property taxable where the wife was transferee. The court held one-half of Part A non-taxable, and one-half of the wife's life interest in Part B non-taxable. The California inheritance tax is a succession tax, imposed on one who takes at death; it also applies to certain inter vivos transfers which are testamentary in character. The court held that it applied to what the wife took, at the husband's death, *"by virtue of the transfer."* This is a different problem from ours. Here, we have a tax on the husband's estate, and the question is the extent of the interest that Leroy transferred when the trust was created. Kirkwood does not pass upon that question.

The language on which the government relies appears at p. 340 of 43 Cal.2d, p. 535 of 273 P.2d as follows: "she, with the advice of counsel, signed a formal consent to 'all of the terms and conditions' of the 'Trust Agreement.' She thereby parted voluntarily with her expectant statutory rights in the community property as they existed before the transfer, and she succeeded to a new and different interest in the property subject to the trust upon giving her consent to the inter vivos disposition breaking up the community status of the property transferred." We do not find this controlling here. It is not an express holding that the community property was transmuted, by creation of the trust, into the husband's separate property. Rather, it appears, in the light of the result reached, to be a holding that the community status of the property continued, but, by reason of the wife's giving up her expectancy, the only community property passing to the wife at the husband's death was a one-half interest (her full community interest) in Part A, and a one-half interest in the life estate in Part B, the balance of the community property passing, by virtue of the trust, to the remaindermen named in Part B. To that extent only was the "community status" broken up. As the court said:

"[T]he tax problem does not concern the wife's interest in the community property *before the transfer* but rather the interest which she received on the husband's death *by virtue of the transfer,* to which she gave her written consent." 43 Cal.2d 339, 273 P.2d 535.

■ Alternatively, the government argues that the Declaration of Trust conferred upon Leroy a general power of appointment over Sadie's community interest, and that therefore that interest is includible under Int.Rev.Code of 1954 § 2041.[3] See also Treasury Regulations on Estate Tax (1954 Code), 26 C.F.R. § 20.2041–1. The government relies on both Section Four and Section Thirteen of the Declaration. Section

---

3. Section 2041 provides:
 "(a) In general.—The value of the gross estate shall include the value of all property. * * *
 "(2) Powers created after October 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 * * *.

 "(b) Definitions.—For purposes of subsection (a)—
 (1) General power of appointment.—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
 * * * * *
 "(C) In the case of a power of appointment created after October 21,

Four merely reserves to Leroy general powers of management, sale and investment of the trust property within the trust, and the right to collect, receive and disburse income. It is not a general power of appointment. Section Thirteen reserves to Leroy the power to revoke, terminate or amend. This, we have held, is a power as agent for the community. It is no more a general power of appointment than the powers that he had over the community property before the trust was created. It has never been held that those powers amount to a general power of appointment over the wife's interest. Cf. United States v. Goodyear, 9 Cir., 1938, 99 F.2d 523, 527.

As we have indicated, there remains a factual question as to whether the properties conveyed to the trustee were community property. That question remains to be tried. The judgment is therefore reversed, with instructions that the trial court take such further proceedings as are consistent with this opinion.

1942, which is exercisable by the decedent only in conjunction with another person—
(i) If the power is not exercisable by the decedent except in conjunction with the creator of the power—such power shall not be deemed a general power of appointment.

(ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent—such power shall not be deemed a general power of appointment. * * * "