JOSEPHINE L. HINDMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Hindman v. Commissioner
Docket No. 482-72.
United States Tax Court
T.C. Memo 1975-315; 1975 Tax Ct. Memo LEXIS 59; 34 T.C.M. (CCH) 1371; T.C.M. (RIA) 750315; October 20, 1975, Filed *59 Martin N. Gelfand, for the petitioner. Richard W. Kennedy, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency in petitioner's 1968 Federal income tax of $2,282.61. The only issue in this case is whether petitioner and her former husband, both California residents, had orally agreed to treat their 1968 incomes as their separate property. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Josephine L. Hindman, formerly Josephine L. Willard, resided in Huntington Beach, California when she filed her petition. She and James E. Willard ("Willard") were married on June 15, 1958. During 1968 both were California residents. On June 2, 1967, petitioner filed against Willard a Complaint for Divorce in the Superior Court in Orange County, California, accompanied by a request for an Order to Show Cause with respect to spousal support to be awarded pending the divorce proceedings. On July 5, 1967, Willard was ordered, interalia, to pay house payments and to provide petitioner $160 per month for her support and maintenance while she lived in the family home, *60 that amount to be reduced by one-half of her take-home pay once she became employed. Petitioner and Willard continued to live together until December 27, 1968, when Willard moved out. On April 18, 1969, petitioner and Willard executed a "Marital Settlement Agreement" which provided in part that "[it] is further hereby understood and agreed that there is no outstanding community debt or obligation of the parties hereto." Petitioner earned $4,373 in salary and $200 in other income in 1968. Willard earned $6,661.41 in salary and $22,405.70 in other income in 1968. Petitioner filed her 1968 income tax return as an "unmarried head of household", and did not report therein any portion of Willard's income. Petitioner had wanted to file a joint return with Willard for 1968, but Willard refused to do so. Petitioner took as itemized deductions on her 1968 return one-half of the home mortgage interest paid and one-half of the property's real estate taxes. Willard filed his 1968 income tax return as a "married filing separately." During 1968, petitioner and Willard each had separate bank accounts. Petitioner opened her account late in 1967 at Crocker Bank after she started working there *61 as a teller. Willard continued to maintain his separate account which he had opened in 1964 at the Southern California First National Bank, and he opened a second separate account at Crocker Bank in late 1968. Petitioner received points or credits toward gifts if she brought in new accounts for the bank. She received such credits for Willard's and her accounts at Crocker Bank, and she and Willard used the gifts obtained with such credits as joint Christmas presents. Petitioner's and Willard's separate checking accounts were not designed to separate earnings; they were opened simply as a matter of convenience. During 1968 Willard also maintained an investment account with Goodbody & Company, a stock brokerage company. In 1968 petitioner purchased a 1968 Camaro using her old Corvair and $100 provided by Willard as a down payment. Title to the car was in the names of "James E. Willard or Josephine L. Willard." Willard also purchased a 1968 Camaro and a Cadillac for business use, putting title to both cars in his name. In 1968 while petitioner and Willard both lived in their home, they purchased furniture for the house, installed a patio, and had landscaping work done on the property. *62 Petitioner received a household advance from Willard of $500 per month through 1968. Willard had been providing such monthly funds since at least 1964. The money was used for grocery and utility bills and for the house payments. Willard gave petitioner a check or cash and she made the payments with cash or money order. Occasionally Willard wrote checks for additional amounts if petitioner needed more funds. When petitioner and Willard executed the "Marital Settlement Agreement", neither individual thought that the provision stating there was "no outstanding community debt" referred to Federal income tax liability. Willard specifically felt that the reference was to debts such as store charge accounts. ULTIMATE FINDING OF FACT Petitioner and Willard did not agree to convert their community property income for 1968 into the separate property of each of them. The earnings of both for 1968 were community property. OPINION Petitioner contends that in the summer of 1967, after filing her Complaint for Divorce, she and her former husband, Willard, entered into an oral agreement whereby all property thereafter acquired was to be the separate property of the earner. Petitioner argues *63 that all of the facts and circumstances, particularly the course of conduct between herself and Willard, support her contention of such an oral agreement, and that therefore all of Willard's earnings in 1968 were taxable to him alone. Respondent claims that petitioner has failed to prove the existence of such an oral agreement, and we agree. Under California law, community property of a husband and wife can be transformed by oral agreement into their separate property. Cal. Civ. Code sec. 158 (West 1954); [1]Katz v. United States,382 F. 2d 723 (9th Cir. 1967); Van Every v. Commissioner,108 F. 2d 650 (9th Cir. 1940), affg. a Memorandum Opinion of this Court, cert. denied 309 U.S. 689 (1940); Woods v. Security First National Bank of Los Angeles,46 Cal. 2d 697, 299 P. 2d 657 (1956); Tomaier v. Tomaier,23 Cal. 2d 754, 146 P. 2d 905 (1944). While it is not necessary to show an express oral agreement, one must be able to conclude inferentially that it existed, based on a review of the facts and circumstances of the case. Estate of J. Leslie Vogel,30 T.C. 125 (1958), *64 affd. 278 F. 2d 548 (9th Cir. 1960); Durker v. Zimmerman,229 Cal. App. 2d 203, 40 Cal. Rptr. 227 (Dist. Ct. App. 1964); see also Thomas v. Hoffman,122 Cal. App. 213, 217, 9 P. 2d 538, 539 (Dist. Ct. App. 1932) where the court mentions that there must be a showing of a "definite present agreement" to that effect. If income of husband and wife under such an agreement is thereafter held to be their separate property, each spouse is liable for his or her Federal income tax on such separate property. Van Every v. Commissioner,supra.
Petitioner was unable to identify convincingly the point in time when the alleged oral agreement was to have occurred. Moreover, the subsequent course of conduct between the parties does not support its existence. Petitioner and Willard lived together throughout 1968. They made major purchases together during 1968, including furniture, landscaping and the addition of a patio to their home. Willard paid a portion of the down *65 payment on petitioner's 1968 Camaro, title to which was in "James E. Willard or Josephine L. Willard." This joint effort by petitioner and Willard extended to even minor details of their lives. Willard and petitioner opened bank accounts at Crocker Bank, where petitioner worked as a teller, and they used the gift credits that petitioner earned from the new accounts for joint Christmas presents. Throughout 1968 Willard continued to provide petitioner with $500 per month for household expenses, a practice he began in 1964. This included money for community expenses such as housing, groceries and utilities. Petitioner took deductions on her 1968 Federal income tax return for one-half of both the mortgage interest on their home and the property taxes. These actions imply a continued practice of sharing earnings, treating them as community property for community use. Petitioner seeks to draw support from wording in the Marital Settlement Agreement, which provides, in part, that the parties agree that there was "no outstanding community debt." Petitioner claims that this wording confirms the existence of their agreement to treat earnings separately because, by it, they represented that *66 each of them was liable for Federal income tax on his or her respective income. But a review of the testimony of both petitioner and Willard indicates that neither one considered the Federal tax implications of that provision. They apparently just forgot about taxes when they were preparing the Marital Settlement Agreement. In fact Willard testified believably that he thought it referred to debts such as store charge accounts. Petitioner, upon whom the burden of proof rests (Rule 142, Tax Court Rules of Practice and Procedure), has simply failed to carry that burden. Willard has stated that there was no agreement that their earnings would be the separate property of each of them, and we believe him. Petitioner was a less convincing witness, and the actions of the parties during 1968 do not corroborate petitioner's contention. Therefore we conclude that the earnings of each of them during 1968 were their community property, and as such petitioner is liable for the Federal income tax on one-half thereof. United States v. Malcolm,282 U.S. 792 (1931); Charloette J. Kimes,55 T.C. 774 (1971); Marjorie Hunt,22 T.C. 228 (1954). *67 Decision will be entered for respondent.
Footnotes
1. This California Code citation is to a provision as numbered and in effect during the year at issue. The cited section has since been renumbered.↩