**NOBLE et al. v. ROGAN, Collector of Internal Revenue.**
**No. 1413.**

District Court, S. D. California, Central Division.

March 24, 1943.

Claude I. Parker, Ralph W. Smith, Ralph Kohlmeier, and Harriet Geary, all of Los Angeles, Cal., for plaintiffs.

Leo V. Silverstein, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Armond M. Jewell, Asst. U. S. Atty., all of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action to recover gift taxes in the amount of $3,819.69 averred to be illegally and erroneously assessed and collected.

This action was commenced by Purdon Smith Hall, who died during its pendency and on motion duly made, Adaline Jane Noble, Emily Purdon von Romberg Spreckels, and Bank of America National Trust and Savings Association, executor of the estate of Purdon Smith Hall, deceased, were substituted as plaintiffs.

On April 25, 1928, Purdon Smith Hall and her husband, William H. Hall, as settlors, and Purdon Smith Hall and William H. Hall and York Trust Company, a corporation organized under the laws of the State of Pennsylvania, as trustees, executed and entered into a trust agreement, the material portions of which provide: "That the Settlors have transferred to the Trustees one thousand (1,000) shares of the Four Dollar Cumulative Participating Preferred Capital Stock of Southeastern Power and Light Company, in trust, nevertheless, to hold the same and the proceeds thereof if sold and with power to sell with unanimous consent of the Trustees, and to pay the income thereof to Emily Purdon von Romberg, daughter of the Settlors, during the term of her natural life, free from anticipations, alienations, or assignments or transfers by operation of law or otherwise, and upon her death to dispose of the principal thereof in the same manner as her interest in the respective estates of the Settlors shall be disposed of by their last wills and testaments, one-half of the trust fund to be disposed of under the will of each Settlor so that the interest of the said Emily under such will and this agreement shall be equalized with any interest given to her sister, Jane, by such will * * *. It is the purpose of the Settlors that this trust agreement shall be superseded by a more formal and detailed agreement and nothing herein contained shall be held or construed to prevent the Settlors from embodying in such formal trust agreement such provisions as to re-

vocation, management, beneficiaries and other matters as they shall determine, but unless and until this agreement is superseded, it shall be and remain in full force and effect."

Said Emily Purdon von Romberg Spreckels was born on the 31st day of January, 1908, and is now living. On March 19, 1930 said William H. Hall died without any change being made in the aforementioned trust agreement. On August 16, 1935, in the State of California, Purdon Smith Hall executed a certain document wherein she declared, inter alia: "* * * that said trust shall be and is hereby made Irrevocable, and the same shall hereafter be administered under the terms of said original agreement as modified by the terms of this declaration * * *. I hereby waive and release any right I might otherwise have to dispose of any or all of the principal of said trust by my last will and testament." In the gift tax return filed by Purdon Smith Hall for the year 1935, was included as part of the sum of $415,253 disclosed on said return as the total value of gifts made by Purdon Smith Hall in said year, the amount of $31,000 as a gift occurring by reason of the execution of the document dated August 16, 1935. Of the said $31,000 the sum of $21,890.34 represented the life estate of said Emily Purdon von Romberg Spreckels and the remainder of said $31,000, to wit the sum of $9,109.66, represents the remainder interest. On or before March 15, 1936, Purdon Smith Hall caused to be filed with the defendant, Purdon Smith Hall's duly executed donor's federal tax return for the calendar year 1935. On March 7, 1939, Purdon Smith Hall filed her written claim for refund of the federal gift tax purportedly overpaid by her in the amount of $3,819.69 with interest as provided by law. The latter sum represents the gift tax on $31,000 for the year 1935. Thereafter Purdon Smith Hall's claim for refund was rejected and she received notice of rejection of said claim on April 7, 1939.

The question for determination is:

 Where two individuals execute a declaration of trust, reserving the right of revocation, and are designated therein as "settlors", is the right to act joint, whereby the trust becomes irrevocable upon the death of one of said settlors, or has the survivor the right to amend or alter the trust? Section 501 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 580 provided: "(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States."

 If the right to amend or act with reference to the trust or any portion thereof survived in the survivor, then the government's contention that a taxable gift was consummated by executing the instrument of August 16, 1935, must be sustained. "A trust of movables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust." Rest. of the Law, Conflict of Laws, sections 297, 299, pp. 397, 381; Hughes v. Commissioner of Internal Revenue, 9 Cir., 104 F.2d 144; Helvering v. Stuart, November 16, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. ——. Here, the administration of the trust was in Pennsylvania, therefore its laws should govern. The only Pennsylvania case cited is In re Solomon's Trust Estate, 1938, 332 Pa. 462, 2 A.2d 825, 826, which is adverse to the position of the government. There "Appellant's parents set up an inter-vivos trust, the income to be paid to the settlors' three children for life, one-third to each child. It further provided: 'The Donors shall have the power, at any time during their lifetime, by an instrument in writing delivered to the Trustee, to modify, alter or amend this agreement in whole or in part; * * *.'" By letter the donors directed the trustee to " 'pay to us the one-third' of the net income which had been paid to appellant. The trustee complied with this direction. Later the father died, and his widow thereafter directed the trustee to resume payment to appellant. After complying with this direction, the trustee was advised it could not legally pay this income to the son. To an account filed complying therewith, the son filed exceptions which were dismissed." In response to the appellant's contention that both parents merely

372

wished to punish the son "temporarily, and intended to restore the income to him, but had neglected to do so," the court declared: "The letter itself determines the legal status of appellant; it is clear and unambiguous. The power to revoke is specifically referred to, and it is indicated clearly that the parents were exercising that very power. The words 'until further notice' meant, of course, joint notice of mother and father. * * * Joint powers, not coupled with an interest, do not survive. * * * It should not be in the power of either party after the death of the other to destroy the trust both created and both intended to subsist. * * *" Croker v. Croker et al., 117 Misc. 558, 192 N.Y.S. 666, is cited by the Solomon case, supra, where the views of the court in the latter case are confirmed. State Street Trust Co. v. Crocker, 306 Mass. 257, 28 N.E.2d 5, 128 A.L.R. 1173. Conceding the correctness of the government's assertion that the question is one of intent, Rest. of the Law, Trusts, section 4d, yet the provisions of the trust manifesting the Settlors' intention do not support the defendant's claim. It is clear that Purdon Smith Hall and her husband intended to create a trust requiring the joint action of both in any subsequent amendment or revocation. This is apparent from the use of the word "Settlors", and the ultimate disposition sought without reserving to the survivor any right of control, which might easily have been expressed. "If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances." Rest. of the Law, Tr. section 330 j. The instrument executed by Purdon Smith Hall declaring the trust irrevocable, was of no legal effect. While a power of appointment existed, to be exercised by Purdon Smith Hall after the death of her husband, William Hall, the exactness in which the appointees were designated and the mode in which distribution was to be accomplished left little more than a ministerial act to be performed. The instrument executed on August 16, 1935 was merely an affirmation of the disposition intended by the settlors in the original declaration of trust. It did not create or transfer any right to or interest in the corpus of the trust nor affect the status of the parties which had been theretofore established by operation of law.

The court finds that there was no gift as contemplated by section 501 of the Revenue Act of 1932 and the tax was illegally assessed. The instrument executed by Purdon Smith Hall dated August 16, 1935 was void and of no effect, as Purdon Smith Hall had no power to change the terms of the trust agreement dated April 25, 1928.

Plaintiffs will recover the amount of the tax illegally paid to the government.