IRMA A. CULVER et al., Plaintiffs, *v.* TITLE GUARANTEE AND TRUST COMPANY, as Trustee under an Agreement Made by MARY CLARK DE BRABANT and Others, Defendant.

First Department, November 2, 1945.

*Henry L. Kanter* for plaintiffs.

*William T. Griffin* of counsel (*Joseph V. McKee* with him on the brief; attorney), for defendant.

WASSERVOGEL, J. In January, 1926, Mary Clark de Brabant and the plaintiffs, Irma A. Culver and Henry B. Culver, as joint settlors, established an *inter vivos* trust of real and personal property. The Culvers transferred to the defendant trustee real property and securities valued at $60,000. Mary Clark de Brabant paid $60,000 in cash into the trust, and, in March, 1927, contributed an additional $40,000.

Under the trust instrument, the income is payable to Henry B. Culver for life, then to Irma A. Culver for her life, if she should survive him. Upon the death of both, the principal is to be turned over to such person or persons as Mary Clark de Brabant may by instrument in writing direct. In default of such direction, the corpus of the trust is to go to Katherine Culver Williams, the daughter of Mary Clark de Brabant, or, if she shall not then be living, to her lawful issue, per stirpes and not per capita. Upon the termination of the trust, the trustee is authorized, in its discretion, to divide the trust res among the persons then entitled, either in cash or in kind, as to the trustee may seem just. No power of revocation is reserved in the instrument.

Mary Clark de Brabant died in December, 1939, without having designated any person to receive the principal of the trust, though by her will, her daughter, Katherine Culver Williams, was named residuary legatee.

On May 19, 1945, a document purporting to revoke the trust was addressed to the trustee. It was signed by Henry B. Culver and Irma A. Culver, Katherine Culver Williams and the two living children of the latter, Louise C. Devine and Edith C. Williams. The notice requested the trustee to convey to Henry B. Culver, Irma A. Culver and Katherine Culver Williams the principal of the trust. On June 13, 1945, the trustee notified the plaintiffs' attorney that it refused to recognize the validity of this attempted revocation.

The question to be determined in the first instance is whether two of the three creators of a living trust may, subsequent to the death of the third settlor, revoke the trust, with the consent of the persons beneficially interested. In the event that this may not be done, we are to decide whether there may be revoca-

tion of so much of the trust as represents the contribution made by the surviving settlors.

The controversy turns upon the significance of the relevant statute (Personal Property Law, § 23, coextensive, in effect, with Real Property Law, § 118): " Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease. in the whole or such part thereof."

Prior to the enactment of the statutes referred to, both living and testamentary trusts of rents and profits had been " indestructible " for almost a century (*Douglas* v. *Cruger,* 80 N. Y. 15, 19; Personal Property Law, § 15; Real Property Law, § 103). Once established, a trust of rents and profits could not be recalled or revoked, either by the court or the parties (*Lent et al.* v. *Howard et al.,* 89 N. Y. 169, 181). This restraint on the alienation of so-called " spendthrift trusts ", bitterly attacked as indicative of a disastrous trend towards paternalism (Gray on Restraints on the Alienation of Property, p. ix), was first introduced into the law of New York in 1828 as part of the thoroughgoing revision of the statutes then undertaken.

While the revisers noted that " the power of the owner to fetter the alienation " of estates " should be confined within certain limits " (3 Rev. Stat., 2d ed., 570), recognition was nevertheless extended to the legitimate. purposes of the settlors or trusts to provide for the education of minors, the separate use of a married woman, or the support of spendthrifts. As to such trusts, the interest of the beneficiary was to be inalienable (Rev. Stat. of N. Y., 1st ed., part II, ch. I, tit. II, § 63). The indestructibility of these estates was the inevitable result of the inalienable character thus impressed upon them by statute. As. was said in *Lent et al.* v. *Howard et al.* (89 N. Y. 169, 181, per ANDREWS, Ch. J.): " Whatever view may be taken of the general jurisdiction of courts of equity, in the absence of any statutory or legislative policy, to abrogate continuing trusts, created for the purpose of providing a sure support for the widow or children of a testator, or other beneficiary, the indestructibility of such trusts here, by judicial decree, results, we think, from the inalienable character impressed upon them by statute."

It was apparent that the salutary purpose for which the inalienability of trusts had been enacted into law was exceeded by the consequences of the legislation. The mischief had been

outstripped by the remedy and a new difficulty created. The legislative purpose had been to enable the settlor to provide a " sure support " for the natural objects of his bounty. It had not been intended to render forever unalterable a provision once made, where change seemed advisable in the view of all concerned, including the settlor upon whose judgment and discretion the original arrangements rested (3 Scott on Trusts, § 338).

Against this background, the intent of section 23 of the Personal Property Law is unambiguous. The settlor, with the consent of the beneficiaries, was authorized to revise his original dispositions. But the consent of the settlor is clearly a cardinal requirement. If the approval of the beneficiaries alone is to suffice, then the inalienability of their estates is destroyed and section 15 of the Personal Property Law effectively nullified.

The question here stems from the fact that there were three settlors, not one. In the absence of statute, where by the terms of a trust instrument, a power of revocation has been reserved to the joint settlors of a trust, all must join in the execution of the instrument to effect revocation. Where death has silenced the will of one, attempted revocation by the survivors is a nullity (*Solomon's Trust Estate*, 332 Pa. 462; *Clark* v. *Freeman*, 121 N. J. Eq. 35; *Richardson* v. *Stephenson*, 193 Wis. 89; *Noble* v. *Rogan*, 49 F. Supp. 370; *Croker* v. *Croker*, 117 Misc. 558).

Nothing in the origin of the legislation under consideration suggests a purpose to authorize the revocation of trusts, jointly created, by the consent of less than all the settlors. Clearly, the consent of each would be required, were all living. It does not appear how the death of one operates to confer upon the others a power to destroy the trust the deceased intended to subsist.

This result, too, follows from the statute itself, which requires the consent of the " creator ". The Legislature has declared that in all its enactments the singular number includes the plural (General Construction Law, § 35).

The consent of Katherine Culver Williams, as residuary legatee under the will of the deceased settlor, adds nothing. A power of revocation, reserved in a trust instrument or arising by operation of law, is neither alienable nor descendible. (See Restatement, Trusts, § 338, Comment a; *Jones* v. *Clifton*, 101 U. S. 225, 230.)

A different question is presented by the suggestion that the instrument of revocation may be given partial significance as effecting the abrogation of the trust of the property conveyed

by the surviving settlors. Here the purpose of the statute is accomplished, since the consent of those who made the disposition is obtained. On this point the parties are in agreement and authority for this determination may be found in *Guaranty Trust Co. of New York* v. *Armstrong* (43 N. Y. S. 2d 897, affd. 268 App. Div. 763, 294 N. Y. 666).

The instrument of revocation, however, purports to revoke the entire trust. The defendant trustee is entitled to a writing, in proper form, revoking so much of the trust as consists of the property originally conveyed by the surviving settlors.

Judgment is directed for defendant, with costs.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Judgment unanimously directed for defendant, with costs. Settle order on notice.