[No. B003654. Second Dist., Div. Five. May 16, 1985.]

Estate of FRANK M. KHAN, Deceased.
MARIGOLD E. KHAN, Petitioner and Appellant, v.
CLIFTON KHAN, as Co-executor, etc., et al., Objectors and
Respondents.

**COUNSEL**

E. C. Mathews for Petitioner and Appellant.

William J. Allard for Objectors and Respondents.

**OPINION**

**FEINERMAN, P. J.**—This appeal presents a single legal issue: Can the cotrustor of a revocable trust unilaterally revoke the trust?

The issue arises in the following context. Frank M. Khan (Frank) and appellant, Marigold E. Khan, husband and wife, owned two parcels of real estate which, although held in joint tenancy, were stipulated to be community property. On July 22, 1981, they mutually executed two separate, but identical, trust agreements, one with respect to each parcel of real estate. On the same date, by quit claim deeds, they conveyed title to each parcel of real property to themselves as trustees of the respective trusts. The quit claim deeds provided: "We declare and agree that *neither we as individuals* nor our heirs or assigns shall have or make any claim or demand upon such property." (Italics added.)

The trust agreements provided that they would hold the "said real property and all our right, title and interest in and to said property and all furniture, fixtures and personal property situated therein on the date of the death of the survivor of us, IN TRUST" for the benefit of their two children.[1]

_____

[1] It is not contended that conveyance to the trust altered the community status of the property, and, of course, the presumption is that it did not. (*Katz* v. *United States* (9th Cir. 1967) 382 F.2d 723.)

The agreement reserved to the trustors the income from the trust during their lifetime. The agreements contained the following revocation clause: "*We* reserve unto *ourselves* the power and right at any time during *our* lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by *us* of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust." (Italics added.)

In September 1981, appellant instituted dissolution proceedings. In November 1981, a restraining order was issued in the dissolution proceeding prohibiting disposing, selling, encumbering or transferring the parties' community property. On January 25, 1983, Frank unilaterally executed a "Notice of Revocation of Trust" which he addressed to "Frank M. Khan and Marigold E. Khan, Trustees," wherein he declared that he revoked "both of the aforesaid trusts, as to his one-half (½) undivided interest of the aforesaid trust estates and hereby notifies the trustees . . . that he holds his one-half (½) undivided interest of said trust estates, as his separate property as a tenant-in-common with Marigold E. Khan, Trustee of the other one-half (½) undivided interest. . . ."

The notice of revocation was sent to appellant's then counsel in the dissolution proceeding, Jean Wong (Wong). No copy of the notice was sent to appellant. Thereafter, on January 25, 1983, Frank executed a will in which he left his entire estate in trust for his children, the corpus to be distributed to them when the youngest reached 25. Frank died on April 7, 1983, prior to trial of the dissolution action.

Frank's will was filed for probate. Appellant petitioned to set aside the estate to herself as surviving spouse pursuant to Probate Code section 640.[2] It was stipulated that if the revocation was ineffective, the estate was minimal and would be subject to the provisions of Probate Code section 640.[3] At the hearing on appellant's petition, counsel for respondent, estate of Frank M. Khan, offered to testify that he spoke to Wong two weeks after

---

[2]At the time of Frank's death, Probate Code section 640 provided: "If the decedent leaves a surviving spouse or minor child or minor children, and the net value of the whole estate, over and above all liens and encumbrances at the date of death and over and above the value of any homestead interest set apart out of decedent's estate under Section 660 or Section 661 of this code, does not exceed the sum of twenty thousand dollars ($20,000), the same may be set aside to the surviving spouse, if there be one, and if there be none, then to the minor child or minor children of the decedent."

[3]Respondent asserts in its brief to this court that the only other property in the estate is an automobile worth considerably less than $20,000.

he sent her the notice of revocation, and that she acknowledged receipt of it and said that everything was fine. Counsel for appellant objected to the proffered testimony, and the testimony was not taken. Counsel for appellant offered to have appellant testify that she never received any notice of intention to revoke and never consented to it. The court never made a formal ruling, but it stated that no claim was being made that the notice had ever been sent to appellant, thereby implying that appellant's testimony would be unnecessary. She did not testify.

After taking the matter under submission, the trial court denied the Probate Code section 640 petition. A motion for reconsideration was also denied and this appeal followed.

Appellant contends that Frank was powerless to revoke the trusts unilaterally. Civil Code section 2280 provides in pertinent part: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate." In addition, Civil Code section 2268 provides: "Where there are several co-trustees, all must unite in any act to bind the trust property, unless the declaration of trust otherwise provides."[4]

In *Hill* v. *Conover* (1961) 191 Cal.App.2d 171 [12 Cal.Rptr. 522], a husband and wife jointly created a trust consisting of community real property. After the husband's death, his daughter attempted to establish that the husband had effected a testamentary revocation of the trust. The court held that since the trust was created jointly by the husband and wife, the husband acting alone, without the wife's consent, could not revoke it. The court further held that since the husband and wife were joint trustees, the husband acting alone could not, in his capacity as trustee, sever trust property so as to work a roundabout revocation. *Hill* v. *Conover, supra,* is cited in Bogert, Trusts and Trustees (2d ed. rev.) section 999, page 285, footnote 1, for the proposition that under California law (Civ. Code, § 2280) unilateral revocation is not possible where there are multiple settlors of a trust.[5] Respondent's reliance on *Fleishman* v. *Blechman* (1957) 148 Cal.App.2d 88 [306 P.2d 548], is entirely misplaced as the husband in *Fleishman* acted unilaterally in *creating* the trust.

---

[4]The subject declarations of trust did not provide that either trustee could act alone, except upon death or incapacity of the other.

[5]Respondent argues that *Hill* v. *Conover, supra,* 191 Cal.App.2d 171, actually only stands for the proposition that unilateral revocation is ineffectual absent notice to the cosettlor. Respondent reads the decision too narrowly. To the extent that respondent would impose such a limitation on it, the language respondent relies on is, at most, dictum.

Multiple settlors can, of course, by mutual agreement provide for other modes of revocation than those provided for by operation of law. The only evidence before the trial court as to the intent of the parties to the subject trust agreements, however, was the revocation clauses themselves and the quit claim deeds. The revocation clauses spoke entirely in the plural, thereby evincing an intent, consistent with California law, that revocation could only be accomplished mutually. Had there been a contrary intent, the agreement would have provided: "We reserve unto ourselves *or either of us* . . . ." Such a meaning cannot be read into the language actually employed. This conclusion is reinforced by the quoted language in the quit claim deeds renouncing the right to make any demands on the property "as individuals."

Respondent argues that the trial court upheld the revocation on a theory of ratification and estoppel. This argument does not find support in the record. The trial court declined to give a statement of reasons for its decision, despite the urging of counsel for both parties that such a statement was essential in the light of other pending litigation between the parties.[6] To the extent that the basis of the trial court's ruling is discernible, it clearly was something other than a theory of ratification or estoppel. The motion was tried on stipulated facts and the operative documents. Counsel for appellant objected to proffered testimony as to what Wong had told counsel for respondent about the notice of revocation. The objection was well-taken as the testimony would have been hearsay. The evidence was that Wong represented appellant in the dissolution action. There was no evidence that she represented her in appellant's capacity as a trustee. The court dismissed as unnecessary the offer to have appellant testify. The record does not sustain the conclusion that the trial court found ratification or estoppel, nor would the record have supported such a finding.

At the time he executed the notice of revocation, Frank and appellant were engaged in dissolution litigation. The notice of revocation represented an attempt by him to transmute community property into separate property in violation of an existing restraining order. Given the existence of that order, the pendency of the dissolution litigation, the legal ineffectuality of the unilateral effort to revoke, and the fact that the record title to the real estate continued to be in the name of the trustees, appellant's mere silence could not act as an estoppel to enable Frank to do that which the law rendered him powerless to do.

---

[6]Since trial of the matter lasted less than a full day, and no request for a statement of decision was made prior to the submission of the cause, the court was not obliged to give a statement of reasons. (Code Civ. Proc., § 632.)

The judgment is reversed.

Ashby, J., and Eagleson, J., concurred.