[No. A059529. First Dist., Div. Three. June 24, 1993.]

Estate of OTTO HEINRICH LOUIS WERNICKE, Deceased.
GERALD S. WITHERSPOON, as Special Administrator, etc., Petitioner
and Respondent, v.
CELESTE PACE WERNICKE et al., Objectors and Appellants.

**Counsel**

Mathews & Evans, Eileen M. O'Hare and Charles T. Mathews for Objectors and Appellants.

Gerald S. Witherspoon for Petitioner and Respondent.

## OPINION

**WHITE, P. J.**—This appeal turns on a single issue: Can one of several cotrustors unilaterally revoke a trust which is made presumptively revocable by statute as to the portion of the corpus he contributed? As we explain, current California law says "no." Because the trial court found to the contrary, we reverse the judgment.

## FACTS

The relevant history began in 1976 when Genevieve Wernicke died and left the residue of her estate to United California Bank (Bank) as trustee. The testamentary trust provided that the income was to be paid equally to Genevieve's son, Otto Heinrich Louis Wernicke, and to her daughter-in-law, Celeste Wernicke, during their joint lives, and then to the survivor. Upon the death of the survivor, the trust was to be distributed equally to Celeste's[1] children (Genevieve's grandchildren) Cedric, Christopher, and Brian Wernicke.

Because the beneficiaries were unhappy with the Bank's performance as trustee, they petitioned the court for possession of the assets. Although the court denied this petition, the court suggested to the Bank that it voluntarily terminate the trust, which the Bank did. Consequently, in 1982 the Bank distributed the assets, which were then valued at $105,303.75, directly to the beneficiaries (and free of trust) in the following proportions: 26 percent to Otto; 26 percent to Celeste; and 16 percent to each of the three grandchildren (Cedric, Christopher and Brian).

For more than two years following distribution, Celeste informally managed the former trust assets (which were entirely in stocks and bonds) for the benefit of all the distributees. However, in 1985 the five distributees created a new trust (Wernicke Family Trust) to hold and manage those assets. The trust instrument explicitly stated that the five trustors had created the trust "to carry out the wishes of . . . GENEVIEVE WERNICKE expressed in her Will . . . ." The Wernicke Family Trust named Cedric, Christopher and Brian as cotrustees. It provided that the trustees were to distribute the income between Otto and Celeste during their joint lives, and thereafter to the survivor. Upon the death of the survivor, the trust assets were to be distributed equally among the trustees. The trust did not specify whether it was revocable or irrevocable.

The corpus of the Wernicke Family Trust consisted entirely of the assets distributed from Genevieve Wernicke's estate. Consequently, Otto and Celeste each contributed 26 percent of the corpus, while Cedric, Christopher

---

[1]We refer to the parties by their first names because all share the same last name.

and Brian each contributed 16 percent. None of the trustors contributed any other funds to the trust at the time it was created or thereafter. From the time the Wernicke Family Trust was created in 1985 until the first quarter of 1992, the trustees distributed one-half of the income from the trust to Otto (approximately $49,000).

In March of 1992, Otto learned he had cancer and was expected to live only a short while longer. Consequently, he met with an estate planning attorney—Gerald S. Witherspoon—to make arrangements for his estate. He and his wife—Mary Holmes Wernicke—had little in the way of financial assets or income, even though both were in their mid-70's.[2] The one exception was Otto's interest in the Wernicke Family Trust. With Otto's permission, Mr. Witherspoon obtained a copy of the trust from the trustees.

Otto's primary concern in planning his estate was to provide support for his wife Mary. Consequently, when Mr. Witherspoon discovered that the Wernicke Family Trust would not pay income to Mary after Otto's death, Mr. Witherspoon suggested to Otto that he execute a written revocation of trust as to his 26 percent interest, and deliver the principal to Mary. At that time, Otto's 26 percent interest was valued at approximately $50,000. Otto agreed to this proposal and executed a revocation of trust which Mr. Witherspoon delivered to Cedric Wernicke as trustee.

After Cedric received the revocation of trust, a flurry of activity followed in which the other four trustors attempted to reach an agreement with Otto which would provide support for Mary during her lifetime, without Otto revoking the trust. However, the trustors never reached a final agreement, and Otto never withdrew his revocation of trust. Otto died on June 17, 1992, leaving his entire estate to Mary Wernicke.

Following Otto's death, Mary Wernicke filed a petition as executor of Otto's estate for an order directing the trustees of the Wernicke Family Trust to pay Otto's 26 percent share to his estate. The superior court granted the petition, and ordered the trustees to pay to Mary, as executor, 26 percent of the principal of the trust, adjusted for recent payments made to Otto.

---

[2]According to Mr. Witherspoon, "Otto . . . was a confirmed bachelor for most of his life; but in 1981 he married Mary Holmes, his best friend since the 1950's. At that late age the couple remained childless, of course, but seemed deeply devoted to each other."

Celeste, Cedric, Christopher and Brian Wernicke have appealed this order. Gerald S. Witherspoon, as special administrator of Otto's estate, is the respondent in this court.[3]

### DISCUSSION

■ As indicated, the pivotal issue in this appeal is whether Otto, as one of five cotrustors of a presumptively revocable trust, had the power to unilaterally revoke the trust as to his contributed share of the corpus. We conclude that, under current California law, Otto did not have the power to unilaterally revoke the trust. Consequently, we reverse the judgment.

When the parties formed the Wernicke Family Trust in 1985, Civil Code former section 2280 provided in pertinent part: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor by writing filed with the trustee. When a voluntary trust is revoked by the trustor, the trustee shall transfer to the trustor its full title to the trust estate." This provision was in effect from 1931 through 1986. (See Historical Note, 10A West's Ann. Civ. Code (1985 ed.) § 2280, p. 393; *Estate of Khan* (1985) 168 Cal.App.3d 270, 273 [214 Cal.Rptr. 109].)

In 1986, the Legislature repealed Civil Code section 2280 and enacted Probate Code section 15400, which provides in pertinent part: "Unless a trust is expressly made irrevocable by the trust instrument, the trust is revocable by the settlor." (Stats. 1986, ch. 820, § 40, p. 2756; Stats. 1986, ch. 820, § 7, p. 2730; see Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) § 15400, p. 568.) The California Law Revision Commission comment to section 15400 states that "[t]he first sentence of Section 15400 restated part of the first sentence of former Civil Code Section 2280 . . . without substantive change." (See Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) § 15400, p. 568.)[4]

As can be seen, neither Civil Code former section 2280 nor current Probate Code section 15400 explicitly address the problem which concerns us here. However, two California cases indicate that where a trust is created

---

[3]The original petitioner and respondent, Mary Holmes Wernicke, died on February 2, 1993. The court below appointed Gerald Witherspoon to be special administrator of Otto Wernicke's estate. Mr. Witherspoon thereafter filed a request for substitution of parties in this court. We hereby grant the request for substitution of parties nunc pro tunc.

[4]Probate Code section 15400 applies to all proceedings concerning trusts commenced on or after July 1, 1987. (Prob. Code, § 15001, subds. (a) & (b).) In 1990, the Legislature reenacted section 15400 without change. (Stats. 1990, ch. 79, § 14; see Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) § 15400, p. 568.)

by more than one trustor, a single trustor cannot unilaterally revoke his share of the trust merely because the trust is made revocable by statute.[5]

In the first case, *Hill* v. *Conover* (1961) 191 Cal.App.2d 171 [12 Cal.Rptr. 522], a husband and wife transferred a piece of real property to a trust they had jointly formed. (*Id.*, at p. 176.) The appellant (husband's daughter) contended the husband had effected a testamentary revocation of the trust. She argued the husband was the sole trustor because the property was his separate property when conveyed to the trust, and that "*therefore* he could revoke the trust agreement" unilaterally. (*Id.*, at p. 182, italics added.) The trial court and reviewing court disagreed, finding that husband and wife both owned the property at the time of transfer, and that both were "trustors" of the trust. Citing Civil Code former section 2280, the reviewing court stated: "[The husband] was not the only trustor; he and [wife] were the trustors named in the trust agreement and they were the trustees. There was no evidence that [wife] signed any document revoking the trust agreement or that [husband] . . . 'filed' any writing with her revoking the agreement." (191 Cal.App.2d at p. 182.) In *Hill*, the appellant did not contend that a joint trustor could revoke the trust as to his portion of the trust only; instead, the appellant argued that the husband was the sole trustor and was *therefore* entitled to revoke the trust.

Although *Hill* did not meet the issue we are concerned with here head on, the court in *Estate of Khan*, *supra*, 168 Cal.App.3d 270, concluded that *Hill* had clearly decided the issue. In *Khan* a husband and wife formed a trust as cotrustors and trustees. (168 Cal.App.3d at pp. 271-272.) The husband later began divorce proceedings and sent a revocation of trust to himself and his wife as trustees to revoke the trust as to his one-half interest therein. (*Id.*, at p. 272.) The husband died prior to dissolution of the marriage. Citing Civil Code former section 2280, the appellate court found the attempted revocation of trust ineffective. The *Khan* court cited *Hill* to support its holding, noting that "*Hill* v. *Conover*, *supra*, is cited in Bogert, Trusts and Trustees (2d ed. rev.) section 999, page 285, footnote 1, for the proposition that under California law (Civ. Code, § 2280) unilateral revocation is not possible where there are multiple settlors of a trust." (*Khan*, *supra*, at p. 273.) The *Khan* court specifically rejected the appellant's attempt to limit *Hill* to its facts. (*Khan*, *supra*, at p. 273, fn. 5.) Moreover, the *Kahn* court noted that the revocation clauses in the trust instrument "spoke entirely in the plural, thereby evincing an intent, *consistent with California law*, that revocation could only be accomplished mutually." (*Khan*, *supra*, at p. 274, italics added.)

---

[5]We note that California is one of only four states where trusts are presumptively revocable by the settlor. In other states the settlor has no implied power to revoke. (Bogert, Trusts and Trustees (2d ed. rev. 1983) §§ 998 & 999, pp. 273-274, 285-286.)

As can be seen from the discussion above, by 1985 California case law apparently held that a single settlor of a multisettlor trust could not unilaterally revoke the trust as to his contributed share of capital merely because the trust was presumptively revocable under Civil Code former section 2280. Although *Hill* v. *Conover* and *Estate of Khan* are admittedly short on analysis, both cases can be supported by basic statutory construction. Both the Civil Code and the Probate Code provide that "the singular number includes the plural . . . ." (Civ. Code, § 14; Prob. Code, § 10.) Thus, Civil Code former section 2280 can be read to state that "every voluntary trust shall be revocable by the *trustor[s]* by writing filed with the trustee[s]"; similarly, Probate Code section 15400 should be read to state that "[u]nless a trust is expressly made irrevocable by the trust instrument, the trust is revocable by the *settlor[s]*." (Italics added.) Because the relevant code sections speak in the plural, revocation can only be accomplished mutually. (*Estate of Khan, supra*, 168 Cal.App.3d at p. 274.)

More important, the Legislature validated the construction placed on Civil Code former section 2280 by *Hill* and *Kahn* when it reenacted that section virtually without change. In 1986, upon recommendation of the California Law Review Commission, the Legislature enacted a comprehensive trust law which reorganized existing trust law and consolidated that law in the Probate Code. (18 Cal. Law Revision Com. Rep. (Dec. 1986) pp. 505, 507; Stats. 1986, ch. 820, § 40, pp. 2750-2798.) As part of this comprehensive reexamination of the law, the Legislature enacted section 15400 of the Probate Code to replace Civil Code former section 2280. (Stats. 1986, ch. 820, § 40, p. 2756; Stats. 1986, ch. 820, § 7, p. 2730; see Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) § 15400, p. 568.) The first sentence of Probate Code section 15400 restated the relevant part of Civil Code section 2280 "without substantive change." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (1991 ed.) § 15400, p. 568.)[6]

■ ■ Under the doctrine of legislative acquiescence, " 'when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction.' " (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 219

---

[6]The Legislature reenacted Probate Code section 15400 in 1990 when it adopted a new Probate Code. (Stats. 1990, ch. 79, p. 707.) The purpose of the new Probate Code was explained by the California Law Revision Commission in the following manner: "In 1980, the Commission was directed to make a systematic review of the entire Probate Code. In response to this directive, the Commission submitted a series of recommendations that resulted in the enactment of legislation that has revised substantially all of the existing Probate Code. Enactment of the proposed new code is the last step in the Probate Code revision process. The new code makes numerous technical, clarifying, conforming, and minor substantive revisions in the existing provisions." (20 Cal. Law Revision Com. Rep. (Dec. 1990) p. 1005.)

[246 Cal.Rptr. 733, 753 P.2d 689], quoting *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; see also *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1111 [17 Cal.Rptr.2d 594, 847 P.2d 560] (dis. opn. of Panelli, J.).) Although this doctrine has recently been criticized by a majority of our Supreme Court (*Ornelas* v. *Randolph, supra*, 4 Cal.4th at pp. 1107-1108), we believe this case is ripe for its application.

Here, the substance of Civil Code section 2280 was reenacted as part of the California Law Revision Commission's comprehensive restructuring of this state's entire trust and probate law. It is fair to assume that the commission was charged with remedying *all* anomalies in this state's trust and probate law. (See 20 Cal. Law. Revision Com. Rep. (Dec. 1990) p. 1005 ["In 1980, the Commission was directed to make a systematic review of the *entire* Probate Code."].) Thus, this case involves more than legislative silence after a court has construed a statute. (Compare *Ornelas* v. *Randolph, supra*, 4 Cal.4th at pp. 1107-1108.) Instead, it involves a legislative decision after systematic review of the relevant subject area. In these circumstances, the Legislature's decision not to contradict the holdings of *Hill* and *Kahn* is " ' "something more than mere silence" ' " and can be read as implied acceptance of those cases. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873], quoted in *Ornelas* v. *Randolph, supra*, 4 Cal.4th at p. 1108.)[7]

-█-█ Respondent's policy arguments fail to convince us that we must reach a different conclusion. These are matters for the Legislature, not this court.[8]

The judgment is reversed. Costs to appellants.

Merrill, J., and Werdegar, J., concurred.

A petition for a rehearing was denied July 21, 1993.

---

[7]In a petition for rehearing, respondent pointed out that the Legislature enacted Civil Code section 5110.150, subdivision (b) in 1986. This statute provides in pertinent part: "Unless the trust instrument expressly provides otherwise, a power to revoke *as to community property* may be exercised by either spouse acting alone." (Italics added.) Respondent argues that this statute was intended to and did overrule *Khan* and *Hill*. However, respondent overlooks the fact that *Khan* and *Hill* did *not* limit their holdings to community property, but instead laid down a rule of general application. (*Estate of Khan, supra*, 168 Cal.App.3d 270, 273 ["[U]nder California Law . . . unilateral revocation is not possible where there are multiple settlors of a trust."].) Consequently, if anything, Civil Code section 5110.150 strengthens this court's opinion, because it shows the Legislature specifically considered this issue and created an exception for community property *only*. This case, of course, does not involve community property but instead involves separate property contributed by five trustors, none of whom were married to each other.

[8]Of course, even after this decision, trust drafters may, by inserting appropriate language in the trust instrument, continue to *explicitly* allow a single settlor of a multiple settlor trust to unilaterally revoke the trust.