**In the Matter of the ESTATE OF Herschel Joseph WEST, Deceased.**

**Herschel J. WEST, Jr.; Richard L. West; and Carole A. West Edmunds, as beneficiaries under the Herschel J. West and Hazel L. West Trust, Appellants,**

**v.**

**Marilyn WEST, an individual, as personal representative of the estate, Appellee.**

**No. 950307–CA.**

Court of Appeals of Utah.

April 4, 1996.

James G. McLaren, and Jeffrey A. Orr, Provo, for Appellants.

Gregory B. Hadley, Provo, for Appellee.

Before ORME, BENCH and BILLINGS.

## OPINION

BILLINGS, Judge:

Beneficiaries of the Herschel J. and Hazel L. West Trust appeal the trial court's determination that Herschel West, a co-trustor/trustee, could unilaterally revoke a joint trust after the death of his co-trustor/trustee and first wife, Hazel West. The trial court granted summary judgment in favor of appellee Marilyn West, Herschel West's second wife, concluding she owned the disputed property as a matter of law. We reverse and remand.

## FACTS

Herschel and Hazel West executed an inter vivos trust, naming themselves as co-trustees and conveying their home into the trust with themselves as beneficiaries and with their children as remainder beneficia-

ries. In the event Herschel and Hazel West became incapacitated, the trust also provided for appointment of a successor trustee who was directed to transfer the property "upon the death of the survivor of us." Upon the death of one spouse, the trust provided the surviving spouse would "continue as sole trustee."

The trust also specifically allowed for revocation, stating:

> We reserve unto ourselves the power and right ... during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

Hazel West died on June 19, 1988. Herschel West later married appellee and quitclaimed the West home, held under the trust, to himself and appellee as joint tenants with full rights of survivorship. Herschel West died on December 11, 1991.

Appellee, as personal representative of Herschel West's estate, filed the Inventory for the Estate of Herschel J. West. The West's home was not listed in the Inventory because appellee believed the property passed to her automatically as the surviving joint tenant. The beneficiaries sought a declaration that the title to the home vested in them upon the death of their father under the joint trust and that the quitclaim deed by Herschel West to himself and appellee was in violation of the trust and therefore void.

The beneficiaries' case was consolidated with Herschel West's probate case. The trial court initially ruled in favor of the trust beneficiaries, concluding the West home was part of the trust. Appellee filed a Request for Clarification of Ruling requesting the trial court to clarify its position on Herschel West's attempt to terminate the joint trust after Hazel West, his co-trustor, died. The court then held that Herschel West had revoked the trust when he quitclaimed the property to himself and appellee. The trial court concluded the trust "contained lan-

guage to the effect that the surviving trustee shall continue as sole trustee succeeding to all the powers, duties and discretionary authority given to the trustees jointly." Therefore, the court ruled that after the death of Hazel West, Herschel West as survivor trustee had the full authority to transfer the property to himself and appellee as joint tenants. The beneficiaries appeal.

## ANALYSIS

■ The beneficiaries contend the trial court erred in concluding Herschel West, a co-trustor, had the authority as a surviving co-trustee to unilaterally revoke a joint trust. The beneficiaries argue that the trust reserves the power to revoke only to the co-trustors jointly, and as such, the surviving co-trustor cannot unilaterally revoke the trust.

On appeal from summary judgment, "we accord the trial court's legal conclusions no deference, but review them for correctness." *Malone v. Parker*, 826 P.2d 132, 133 (Utah 1992). "In interpreting the terms of a trust, the proper focus of inquiry is the trustor's intent." *Kline v. Utah Dep't of Health*, 776 P.2d 57, 61 (Utah App.1989). "The court, however, is limited to establishing not what the [trustors] meant to say, but what was meant by what they did say. The court's function, therefore, is not to modify the trust or create new terms different from those to which the parties have agreed." *Williams v. Springfield Marine Bank*, 131 Ill.App.3d 417, 86 Ill.Dec. 743, 745–46, 475 N.E.2d 1122, 1124–25 (1985) (citations omitted).

Under Utah law, "[t]he right to revoke [a] trust in whole or in part is recognized as one of the inherent rights of the settlor." *Alexander v. Zion's Sav. Bank & Trust Co.*, 4 Utah 2d 90, 287 P.2d 665, 668 (1955) (Wade, J., dissenting); *accord Kline*, 776 P.2d at 61–62. However, " '[i]f the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he [or she] can revoke the trust only in that manner or under those circumstances.' " *Kline*, 776 P.2d at 61 (quoting Restatement (Second) of Trusts § 330, cmt. j (1959)). Further, a trustor can grant a trustee the power to revoke under the specific terms of the trust agreement. *See* Restatement (Second) of Trusts § 37 cmts. a, b (1959). In *Kline*, this court inferred that "the reserved power of revocation or modification was delegable by [trustor] to an agent by means of a power of attorney [if] that [trustor] intended to delegate the authority," but recognized that its determination was confined to the trustor's intent as expressed in the trust agreement. *Kline*, 776 P.2d at 63.

Therefore, we must examine the language of the joint trust agreement to determine whether its terms provide that Herschel and Hazel West retained the revocation power as co-trustors or whether they delegated that power to themselves as co-trustees. Only if the language of the trust provides that the power to revoke was delegated to the Wests as co-trustees can we uphold the trial court's grant of summary judgment in favor of appellee.

The Wests' joint trust provides for revocation as follows:

> We reserve unto *ourselves* the power and right at any time during *our lifetime* to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

(Emphasis added.)

■ The revocation provision does not delegate the power to revoke to the Wests as trustees. The provision states, "we *reserve* unto ourselves...." This language clearly provides that, as the creators of the joint trust, Herschel and Hazel West chose to retain the power of revocation as co-trustors. A trustor must specifically give the trustee powers under the agreement. Otherwise, as in this case, an explicit reservation of the power to revoke is a right reserved in the Wests as co-trustors.

Appellee claims, however, the trust language giving the successor trustee powers, gave Herschel West, as successor trustee, power to revoke the trust. The trust provides that a successor trustee shall be ap-

pointed if Herschel and Hazel are incapacitated. That successor trustee is empowered to "pay to [the trustors] or disburse on [their] behalf such sums from income or principal as appear necessary or desirable for their comfort or welfare." Appellee argues the original trustees, Herschel and Hazel West, must have been given at least equivalent rights and powers as the successor trustee.[1] Therefore, Herschel West, as the sole trustee, should have the same power as a successor trustee would have to disburse principal, which is effectively the power to revoke the trust. We disagree.

■ The mere statement that the trustee may disburse principal is not a specific reservation of the right to revoke. *See* George G. Bogert, The Law of Trusts and Trustees § 554, at 96 (Rev. 2d ed. 1993). The power to disburse principal does not specifically reserve a power in the trustees to revoke, and thereby destroy, the entire trust. The trustee has a fiduciary duty to maintain the trust under the specific trust terms and for the benefit of the designated beneficiaries. In addition, the revocation clause, which is the trustor's only specific reservation of a revocation power, states the disposition of property must be "by *us*," thus requiring joint action.[2]

Courts from other jurisdictions have consistently held that similar revocation clauses create only a joint power that cannot be exercised by the surviving co-trustor. *See,*

e.g., *Noble v. Rogan,* 49 F.Supp. 370, 371 (S.D.Cal.1943); *Estate of Wernicke,* 16 Cal. App.4th 1069, 20 Cal.Rptr.2d 481, 484–85 (1993); *Khan v. Estate of Khan,* 168 Cal. App.3d 270, 214 Cal.Rptr. 109, 111–12 (1985); *Williams,* 86 Ill.Dec. at 746, 475 N.E.2d at 1125; *In re Race's Trust,* 9 Misc.2d 155, 169 N.Y.S.2d 600, 603 (1957); *In re Solomon's Estate,* 332 Pa. 462, 2 A.2d 825, 826 (1938).

In *Khan,* the court found a revocation clause containing the language "we reserve unto ourselves" and written entirely in plural language, "evinc[ed] an intent ... that revocation could only be accomplished mutually." 214 Cal.Rptr. at 111–12. In *Khan,* a husband and wife formed a trust as co-trustors/trustees and the husband subsequently attempted to unilaterally revoke the trust. *Id.* 214 Cal.Rptr. at 111. The court, having only the subject trust agreements as evidence of intent, concluded it could not read into the words "we reserve unto ourselves," an intent for unilateral revocation. Rather, the court determined such an intent could only be inferred through the use of words such as "ourselves *or either of us.*" *Id.* 214 Cal.Rptr. at 112.

Similarly, in *Williams,* the court held "[w]here the power to modify a trust has been reserved to the joint [trustors] of the trust, both must join in executing an instrument to effectuate a change. An attempted modification by one after the death of the

1. The trial court relied on the following statutory provision to support its conclusion: "If two ... trustees are appointed to perform a trust, and if any of them ... ceases to be a trustee, the surviving or remaining trustee[] shall perform the trust and succeed to all the powers, duties, and discretionary authority given to the trustees jointly." Utah Code Ann. § 75–7–405(2) (1993). However, the terms of the trust agreement must govern over the statute. Only if the trust grants the power of revocation to the trustees would the statute be applicable.

2. Alternatively, appellee argues the language of the trust's revocation provision should be read to allow Herschel West, the surviving co-trustor, to unilaterally revoke the trust. More specifically, appellee asserts the words "during our lifetime," as used in the revocation clause, are also used in other provisions of the trust agreement, and a requirement for joint action would yield untenable results.

Appellee fails to recognize the use of the language "we reserve unto *ourselves*" in the revocation clause. (Emphasis added.) Of the provisions appellee claims joint action makes irrational, the only other provision containing both "during our lifetime" and "we reserve unto ourselves" is the clause allowing the co-trustors to encumber and to receive income from the property. Appellee claims that under an interpretation requiring the Wests to exercise these powers by joint action while both are alive, the surviving spouse would not be entitled to collect income. However, this provision explicitly provides for the income to be paid "to ourselves *as individuals.*" (Emphasis added.) This language expressly provides for the power or right to be exercised without joint action. Therefore, the trustors distinguished when they intended individual or joint action.

other is a nullity." 86 Ill.Dec. at 746, 475 N.E.2d at 1125 (citing *Culver v. Title Guar. & Trust Co.*, 269 A.D. 627, 58 N.Y.S.2d 116 (1945)).

In the instant case, the revocation language of the trust agreement speaks only in the plural. The specific terms, "we reserve unto ourselves" are identical to the terms the *Khan* court construed. Additionally, the trust states "disposition by *us* . . . of the property . . . shall constitute . . . revocation." (Emphasis added.) A literal reading of these terms mandates a finding that the co-trustors must mutually exercise the power to revoke the trust. Therefore, Herschel West as the surviving trustor/trustee could not unilaterally revoke the trust after the death of his co-trustor/trustee, and his quitclaim deed to himself and appellee was a nullity. Accordingly, we conclude the trial court's grant of summary judgment, determining Herschel West had authority to unilaterally transfer the trust property, was incorrect. The joint trust, as the court originally held, has title to the home transferred out of trust by Herschel West.

### CONCLUSION

We hold that under the terms of the trust agreement, the power to revoke was reserved in Herschel and Hazel West as co-trustors. Additionally, the trust terms require joint action to revoke the trust. Accordingly, the surviving trustor could not unilaterally revoke the trust after the death of the other co-trustor. We therefore reverse the trial court's grant of summary judgment and remand for the entry of an order restoring the property to the joint trust and for such further proceedings the trial court determines are necessary.

ORME, P.J., and BENCH, J., concur.