In the Matter of the ESTATE OF
Herschel Joseph WEST,
Deceased.

Herschel J. WEST, Jr., Richard L. West, and Carole A. West Edmunds, as beneficiaries under the Herschel J. West and Hazel L. West Trust, Plaintiffs and Respondents,

v.

Marilyn WEST, an individual, as personal representative of the Estate, Defendant and Petitioner.

No. 960260.

Supreme Court of Utah.

Nov. 28, 1997.

Timothy C. Houpt, Edward R. Munson, Salt Lake City, for plaintiffs and respondents.

Jeffrey W. Wilkinson, Salt Lake City, for defendant and petitioner.

HOWE, Justice.

Children listed as beneficiaries of their parents' inter vivos trust challenge the power of their father to convey the marital home, the sole trust asset, to himself and his second wife in joint tenancy following the death of the children's mother. The trial court granted judgment on the pleadings in favor of the second wife. The court of appeals reversed, *West v. West (In re Estate of West)*, 915 P.2d 504 (Utah Ct.App.1996), and we granted certiorari. 925 P.2d 963 (Utah 1996).

## FACTS

In 1986, Herschel West, Sr., and his wife Hazel West executed a "Declaration of Trust" (the West Trust or the trust), declaring that they held their Provo home in trust for the benefit of themselves and after their deaths for their three adult children: Herschel West, Jr., Richard West, and Carole Ann West Edmunds—plaintiffs in this case. This property was the sole asset of the trust. Hazel West died on June 19, 1988, and seventeen months later Herschel West, Sr., remarried. On January 16, 1991, acting as the "Sole Trustee," he executed a "Quit Claim Deed," conveying the property to himself and his second wife Marilyn West, the defendant in this case, as joint tenants with full rights of survivorship. He died later that same year. Marilyn West, as personal representative of Herschel's estate, did not include the property in the inventory of the estate because she believed the property passed to her automatically as the surviving joint tenant under the quitclaim deed.

Herschel and Hazel's children, contingent beneficiaries under the trust, brought this suit against Marilyn West in the district court, alleging that the quitclaim deed was voidable as a violation of Herschel West's fiduciary duties as trustee and seeking, along with other relief, a return of the property to the trust. The district court consolidated the suit with the probate of Herschel West's estate. Marilyn West moved for judgment on the pleadings pursuant to Utah Rule of Civil Procedure 12(c), and the children filed a cross-motion for partial summary judgment. The district court granted Marilyn West's motion for judgment on the pleadings and denied the children's motion. The court held that the trust document was valid and unambiguous but ruled as a matter of law that the trust had been revoked pursuant to paragraph 5 of the document, which provides, "The sale or disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust." Thus when Herschel West, Sr., acting as the surviving and sole trustee, quitclaimed the property to himself and his second wife, the trust was revoked.

The West children appealed to this court, and we poured the case to the court of appeals. The court of appeals likewise determined that the trust document was unambiguous but held as a matter of law that Herschel West's attempt to revoke the trust by

conveying the property out of the trust under paragraph 5 was ineffective. *West*, 915 P.2d at 508. The court held that the instrument gave Herschel West no power as sole trustee to terminate the trust and that the powers of revocation he had reserved in paragraph 5 had been reserved to himself and Hazel West jointly, as co-settlors, and could not be exercised unilaterally by him as the surviving settlor. *Id.* at 506–08. In effect, the court of appeals concluded that the trust became irrevocable upon the death of Hazel West. Accordingly, the court reversed the judgment of the trial court and remanded "for the entry of an order restoring the property to the joint trust and for such further proceedings [as] the trial court determines are necessary." *Id.* at 508. We granted Marilyn West's certiorari petition to review the decision of the court of appeals.

## STANDARD OF REVIEW

While the district court had granted Marilyn West a judgment on the pleadings under Utah Rule of Civil Procedure 12, the court of appeals describes its decision as a reversal of "the trial court's grant of summary judgment." *West*, 915 P.2d at 505. Marilyn makes much of this discrepancy, but for purposes of appellate review, the standard for reviewing a summary judgment or a judgment on the pleadings is the same, since motions for either kind of judgment can be granted only as a matter of law. In reviewing a judgment under rule 12, a court "must accept the material allegations of the [nonmoving party's pleadings] as true, ... and the trial court's ruling should be affirmed only if it clearly appears that [the nonmoving party] can prove no set of facts in support of his claim." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990) (citations omitted). Similarly, in reviewing a grant of summary judgment under rule 56, an appellate court may reverse the trial court only if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). The case as it comes to us therefore presents only issues of law, and we afford the decision of the court of appeals no deference but review it for correctness. *See State v.*

*Pena*, 869 P.2d 932, 936 (Utah 1994) (questions of law are reviewed for correctness).

## ANALYSIS

The core issue here is whether Herschel West, either as sole trustee or as surviving settlor, had the power and the right under state law or the terms of the trust to convey the property out of the trust to himself and his wife Marilyn West after his first wife Hazel West died.

A trust ... is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held [the trustee] to equitable duties to deal with the property for the benefit of another person [the beneficiary], which arises as a result of a manifestation [by the settlor, or trustor] of an intention to create it.

Restatement (Second) of Trusts § 2 (1959). We have held that to create an inter vivos trust, a settlor "must have an intent to create a presently enforceable trust, ... the trust property must be clearly specified and set aside, ... and the essential terms of the trust must be clear enough for the court to enforce the equitable duties that are the *sine qua non* of a trust relationship." *Sundquist v. Sundquist*, 639 P.2d 181, 183–84 (Utah 1981) (citations omitted). No one disputes that Herschel and Hazel West fulfilled these requirements in their establishment of the West Trust.

Marilyn West contends that the trust gave Herschel and Hazel West the power as trustees to revoke the trust by selling or otherwise disposing of the trust property, that Herschel, as surviving trustee, was capable of exercising that same power individually after the death of his wife, and that he did exercise it when, acting as "Herschel J. West, Sole Trustee," he quitclaimed the property to himself and Marilyn.

The determinative questions here are three: (1) whether the West Trust did in fact authorize Herschel and Hazel as trustees to sell or otherwise dispose of the house and thereby revoke the trust, (2) whether Herschel West, following Hazel West's death, became the sole trustee and succeeded to all the powers previously belonging to the joint

trustees, and (3) whether Herschel West could, consistent with his fiduciary duty as trustee, remove the house from the trust by quitclaiming it to himself and his second wife.

■ Paragraph 5 of the trust document provides:

> We reserve unto ourselves the power and right at any time during our lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of any beneficiary and without giving notice to any beneficiary. *The sale or other disposition by us of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.*

(Emphasis added.) This paragraph specifies two ways in which the trust can be revoked. The first sentence must be interpreted as authorizing the *settlors* to amend or revoke the trust, since a *reservation* of power would apply to the settlors who have granted the property but not to the trustees who have received it. The second sentence empowers the *trustees,* not the settlors, to sell or dispose of the property in the trust, since by establishing the trust the settlors have conveyed away their legal title to the property. Such sale or disposition of property will "constitute" a revocation of the trust. Therefore, Herschel and Hazel West, as joint trustees, had the power to remove the house from the trust.

■ We next address the right of Herschel West, as sole trustee, to exercise the powers granted to the joint trustees. Although it is not clear that the surviving *settlor* may revoke the trust, the surviving *trustee* clearly may work a revocation by selling or disposing of the property.

The sale or disposition of the trust property can be accomplished only by the trustee(s) in whom the legal title resides. Any power granted to Herschel and Hazel as trustees could be exercised by him unilaterally after the death of Hazel. The Utah Uniform Probate Code provides, "If two or more trustees are appointed to perform a trust, and if any of them ... having accepted, ceases to be a trustee, the surviving or remaining trustees shall perform the trust and succeed to all the powers, duties, and discretionary authority given to the trustees jointly." Utah Code Ann. § 75-7-405(2). Likewise, the West Trust provides in paragraph 7, "In the event of the physical or mental incapacity or death of one of us, the survivor shall continue as sole Trustee." Thus any rights given to Herschel and Hazel as co-trustees could be exercised by the survivor of them as sole trustee.

Therefore, although the emphasized language of the second sentence of paragraph 5 refers to "the sale or disposition by us," this must be interpreted to mean the trustees while both are alive or the sole trustee when one of them has died. Otherwise, a sole trustee would have less power than the joint trustees held. That would be illogical, as nothing in the trust instrument denies to a sole trustee any of the powers possessed by the joint trustees. For example, in paragraph 4 the trustees are given the power to place a mortgage or lien upon the property. If the surviving trustee were to be denied this power, then the survivor of Herschel and Hazel West would be helpless to mortgage the property if he or she needed funds to sustain him- or herself in the later years of life. It defies common sense that a couple creating a revocable inter vivos trust naming themselves as trustees would deliberately preclude themselves from fully utilizing the property for their own benefit while both or either one of them was alive, particularly when it appears that the purpose of this form-book trust document may have been simply to avoid probate. Therefore, we conclude that upon the death of Hazel West, Herschel West succeeded to all of the powers exercisable by the joint trustees, including the power to sell or dispose of the property, which works a revocation of the trust.

■ The only remaining question is whether Herschel West's removal of the property from the trust was consistent with his fiduciary duty as trustee. A trustee has "exclusive control of the trust property, subject only to the limitations imposed by law or in the trust instrument." *Continental Bank & Trust Co. v. Country Club Mobile Estates,* 632 P.2d 869, 872 (Utah 1981). The document at issue here does not provide any

relevant limitations on the powers of the trustees to control the property, so any limitation that we find must be one imposed by law.

■ Under Utah law, a trustee has the power to "acquire or dispose of an asset, for cash or on credit, at public or private sale." Utah Code Ann. § 75–7–402(3)(h)(i). This power is circumscribed by the trustee's "obligation as a fiduciary," *id.* § 75–7–402(2), which requires that "[e]xcept as otherwise provided by the terms of the trust, a trustee shall observe standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another." *Id.* § 75–7–302. The Utah Code also contains provisions against transactions involving a conflict of interest: "Any sale or encumbrance to the trustee, [or] the trustee's spouse ... or any transaction, which is affected by a substantial conflict of interest on the part of the trustee, is voidable by any interested person, ... unless ... the trust expressly authorized the transaction...." *Id.* § 75–7–404(2). By piecing these code sections together, we can articulate a rule governing the sale or disposition of trust assets by a trustee. Trustees have "exclusive control of the trust property" and the power to "dispose of [it] ... at public or private sale." Nevertheless, a trustee's transfer of trust property to himself and/or his spouse may constitute a breach of the trustee's fiduciary duty and a voidable "sale ... affected by a substantial conflict of interest," except to the extent that "the trust expressly authorized the transaction."

■ Here, however, at the time Herschel West executed the quitclaim deed, he was not only the sole trustee, he was also the sole present beneficiary.[1] A revocable trust in which the settlor/trustors are also the trustees and manage the trust for their own benefit during their lifetimes is a standard estate planning device. While such a trust does not remove assets from a settlor's estate for the purposes of estate tax, it does avoid probate of the assets while allowing the settlor to retain control of the trust property during his or her own lifetime.

■ The active beneficiaries of a trust, as distinct from the contingent beneficiaries, are the individuals for whose benefit and support the property is presently being managed. In the instant case, the trust was established for the initial benefit of Herschel and Hazel West and the future benefit of their children. Although the trust instrument does not specifically name the parents as beneficiaries, several provisions make their status as beneficiaries clear. For instance, paragraph 4 states:

> We reserve unto ourselves the power and right during our lifetime ... (2) to collect any rental or other income which may accrue from the trust property and to pay such income to ourselves as individuals. We shall be exclusively entitled to all income accruing from the trust property during our lifetime, and no beneficiary named herein shall have any claim upon any such income and/or profits distributed to us.

Even the West children do not dispute the right of their parents, and the survivor of them, to the use of the property during their lifetimes. The court of appeals also recognized them as beneficiaries.

The trust instrument is clear that the children do not become beneficiaries until the "death of the survivor" of the two settlors. The instrument provides:

> NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that we do hereby acknowledge and declare that we hold and will hold said real property and all our right, title and interest in and to said property and all furniture, fixtures and personal property situated therein on the

---

1. The children argue that a finding that Herschel West had authority to take trust assets would eliminate his fiduciary duty to the listed beneficiaries and "render the Trust a nullity." If this is the case, then thousands of inter vivos estate planning trusts which designate the settlor as trustee and authorize the trustee to manage the property for the benefit of the settlor during the settlor's lifetime are invalid. The admission that such trusts may be a convenient legal fiction does not change the fact that they are well entrenched in the law, useful, and accepted. Furthermore, if the trust is a nullity then Herschel West owned the house in fee simple and could dispose of it as he chose.

date of the *death of the survivor of us,* IN TRUST

    1. For the use and benefit of the following (3) persons [naming their three children].

(Emphasis added.) The children's vested rights are subject to divestiture and will not ripen until the death of the surviving settlor. *See In re Estate of Groesbeck,* 935 P.2d 1255, 1258 (Utah 1997) (citing John R. Price, *Price on Contemporary Estate Planning* § 10.9 (1992)).

    Consequently, we conclude that Herschel West, Sr., as sole trustee, could sell or dispose of the property as he saw fit. This involved no breach of his fiduciary duty since he was at that point the sole beneficiary. Because his conveyance of the property out of the trust as the sole trustee worked a termination of the trust (paragraph 5), no trust existed at his death, and the children's contingent interest in the terminated trust avails them nothing.

    We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

    ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.